## HARTFORD ACCIDENT & INDEMNITY CO.
### v. HOAGE, Deputy Com'r, et al.
### No. 6628.

United States Court of Appeals for the District of Columbia.

Decided June 29, 1936.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Leslie C. Garnett, Allen J. Krouse, and Wm. H. Labofish, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case arises under the provisions of the District of Columbia Workmen's Compensation Law [1] and involves an award of compensation for temporary total disability and permanent partial disability, sustained by Gus Malouhos, employee, on July 4, 1935. The injury occurred within the District of Columbia and the appellant, the Hartford Accident & Indemnity Company, as insurance carrier, and appellee Gus Malouhos were subject to the provisions of the act. The salient facts in the case, as contained in a stipulation of the respective parties, are as follows: "On the 4th day of July 1935 the claimant, Gus Malouhos, was working as a chef for George's Lunch and was in the kitchen cooking spare ribs when a man he had never seen before came into the kitchen and struck a colored man named Robert Gray and then stuck a knife into the root of claimant's nose, and, leaving the knife there, ran away, and claimant pulled the blade out, and this injury resulted in the loss of claimant's eye; that the claimant did not talk to his assailant before or after the attack, and the man then ran to the second floor and jumped thirty feet to the ground; that the assailant did not work around, nor have anything to do with, the restaurant, and claimant did not know who he was but would know him again if he saw him; that there is one dining room in the back, and then the kitchen, and another dining room in back of the kitchen, and people from the lunchroom in front go back and go upstairs to the bathroom and go through the kitchen, but the employment of claimant requires him to stay in the kitchen all the time."

The claimant duly filed a claim for compensation with the Deputy Commissioner of Compensation in the District of Colum-

---

[1] Longshoremen's and Harbor Workers' Compensation Act (chapter 509, 44 Stat. 1424, as amended by the Act of May 26, 1934, c. 354, 48 Stat. 806, 33 U.S.C.A. § 901 et seq.) made applicable to the District of Columbia as a workmen's compensation law by the Act of May 17, 1928 (chapter 612, 45 Stat. 600, D.C. Code, title 19, §§ 11, 12, 33 U.S.C.A. § 901 note).

bia, who, after hearing the testimony, found the facts to be as above set out, and that the personal injury which was sustained by the claimant occurred in the course of and arose out of his employment, resulting in a wage earning disability as follows: "* * * the claimant suffered temporary total disability from July 5, 1935, to and including August 5, 1935, a period of 4 4/7 weeks; that as a further result of the said injury the claimant suffered permanent partial disability equivalent to 100 per cent. of the loss of vision of the right eye, for which he is entitled to compensation for 140 weeks; that the total amount of compensation to which the claimant is entitled by reason of the said injury amounts to 144 4/7 weeks; that the weekly wage of the claimant at the time of the injury was $34.50, working six days a week; that the average weekly wage is $33.17; that the claimant is entitled to compensation at the rate of $22.12 per week; that compensation for 144 4/7 weeks at the rate of $22.12 per week amounts to $3197.92; that compensation has accrued from July 5, 1935, to and including September 25, 1935, a period of 12 weeks, at the rate of $22.12 per week, amounting to $265.44, which amount of compensation is due and payable forthwith; that the claimant is entitled to medical treatment such as the nature of the injury and the process of recovery may require."

The appellant, the insurance carrier, thereupon filed a bill in equity in the Supreme Court of the District of Columbia praying for a perpetual injunction against the enforcement of this award upon the ground that it was not sustained by the evidence. The lower court upon consideration held against appellant's claim and dismissed the bill. Whereupon, the present appeal was taken.

Under section 2 of the District of Columbia Workmen's Compensation Act, 33 U.S.C.A. § 902, it is provided as follows: "The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."

The only substantial question presented by the record in this case is whether the injury suffered by the employee, as aforesaid, arose out of his employment. It is clear that it occurred in the course of his employment. The appellant, however, contends that the injury did not arise out of the employment, and consequently that it was not compensable under the terms of the statute.

We are of the opinion upon the undisputed facts in this case that the claimant's injury arose out of his employment, because the terms and conditions of his employment placed the claimant in the position wherein he was assaulted by the assailant and sustained the injuries from which he suffered. The place where plaintiff was assigned to work was open to all customers of the employer's restaurant or those who sought to go from the restaurant to the bathroom and was practically open to entrance by the public. The place was within the industrial premises of the employer. It is true that claimant's injury was inflicted by a drunken or crazed stranger and was not such a danger as would ordinarily be apprehended by either the employer or the employee. Nevertheless, it was suffered by the claimant when at his place of duty, when upon the industrial premises of his employer, and while he was engaged at the work for which he was employed.

An analogous question is presented in cases wherein an employee is injured upon the public streets by hazards incident thereto while acting upon business of the employer. In New Amsterdam Casualty Co. v. Hoage, 61 App.D.C. 306, 62 F.(2d) 468, 469, we said: "In the early administration of compensation laws, the rule was often adopted that injuries occurring upon the public highways due to traffic hazards did not 'arise out of' the workman's employment. This rule was founded upon the theory that such hazards are common to the community at large and are not incident to particular employments, and it was held that the compensation acts were not designed to exempt the employee from such risks. This doctrine, however, has since been abandoned. It is now held by the greater weight of the authorities that, if an employee in the course of his employment has to pass along the public streets and thereby sustains an accident by reason of the risks incident to the streets, the accident 'arises out of' as well as 'in the course of' his employment." Citing Schroeder & Daly Co. v. Industrial Comm.

of Wisconsin, 169 Wis. 567, 173 N.W. 328, 329; McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164, 140 A. 114; Hansen v. Northwestern Fuel Co., 144 Minn. 105, 174 N.W. 726; Porter Co. v. Industrial Comm., 301 Ill. 76 133 N.E. 652; Morse v. Port Huron & D. R. Co., 251 Mich. 309, 232 N.W. 369, and Fiarenzo v. Richards & Co., 93 Conn. 581, 107 A. 563.

In the case of Katz v. A. Kadans & Co., 232 N.Y. 420, 134 N.E. 330, 331, 23 A.L.R. 401, it appears that the employee was a dairyman's chauffeur and was driving his employer's car on the street after delivering some cheese and that an insane man stabbed him; that a lot of people were running after the insane man and he stabbed any one near him. The question presented was whether the employee's injuries arose out of his employment. The court held the accident compensable, saying among other things:

"If the work itself involves exposure to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. This is the rule unequivocally laid down by the House of Lords in England: 'When a workman is sent into the street on his master's business, * * * his employment (necessarily) involves exposure to the risks of the street, and injury from such a cause necessarily arises out of his employment.' Finlay, L. C., in Dennis v. White & Co., (1917) L.R. App.Cas. 479. * * *

"The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer. The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals, or violent madmen are afoot therein as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad. * * *

"The risk of being stabbed by an insane man running amuck seems in a peculiar sense a risk incidental to the streets to which claimant was exposed by his employment."

In the case of Frigidaire Corporation v. Industrial Accident Comm., 103 Cal.App. 27, 233 P. 974, it was held that where a zone manager with headquarters in San Francisco, after finishing his labors in Reno, Nev., proceeded to the station intending to board the San Francisco train, was struck by a wild bullet from a policeman's pistol and died, that the death arose out of his employment and was compensable.

In Greenberg v. Voit, 250 N.Y. 543, 166 N.E. 318, claimant's husband, while sweeping the front stoop of a building in the performance of his duties as janitor thereof, was killed by gangsters who passed through the streets in an automobile shooting indiscriminately. The court overruled the contention made by the defendants that the injury and death did not arise out of the employment and affirmed the award.

We are of the opinion that the principles relating to compensation set out in the foregoing causes arising from street accidents apply in the present instance. The claimant while serving as employee in this case was stationed in the kitchen of his employer. He was kept busily at work in the performance of his duties. The location was practically open to the general public and the employee could easily be reached by an assailant. The kitchen was situated between the lunch room and a back dining room and was also a passageway for persons desiring to go from either to the toilet rooms upon the next floor. The dangers imminent to travelers upon the public streets were present therefore in this case, and the conclusion follows that injuries resulting from them arise out of the employment of the employee.

In Entrocut v. Paramount Bakery & Restaurant Co., 222 App.Div. 844, 226 N. Y.S. 808 (without opinion) it was held that where a policeman waiting to be served in a restaurant was cleaning his revolver which went off accidentally and shot a waiter as he was entering from the kitchen, the accident was compensable.

A sales agent acting in the service of his employer went into the home of a friend to use the telephone in order to learn of the whereabouts of another person. While talking over the telephone he was stabbed to death by an insane person from the rear. The death of the employee was held to be compensable as arising out of his employment. London Guarantee & Accident Co. v. McCoy, 97 Colo. 13, 45 P.(2d) 900.

In Keen v. New Amsterdam Casualty Co., 34 Ga.App. 257, 129 S.E. 174, it was

held that injuries arose out of and in the course of employment when a garage employee, while asking instructions from employer, was shot by customer of employer who was irritated at the employer's refusal to do additional work on his car without further charge.

The case of Bandassi v. Molla, 200 App. Div. 266, 267, 192 N.Y.S. 776, holds that the injury which resulted in the death of claimant's intestate arose out of and in the course of his employment, where it appeared that his employer's plant was on the lower floor of the building; that an iron pipe full of hot emery dropped through the fire escape, skylight, and shafting from the eighth floor of the same building and set fire to the decedent's clothing, which caused the burns from which he subsequently died; and that the iron pipe fell from the place of business of a third person which had no connection with or relation to the employer's business.

Consistently with the foregoing authorities, we affirm the decision of the lower court.

Affirmed.