185 P.2d 712

**LOUIE v. BAMBOO GARDENS et al.**

No. 7350.

Supreme Court of Idaho.

Oct. 16, 1947.

E. B. Smith, of Boise, for appellant.

Walter Oros and Glenn A. Coughlin, both of Boise, for respondent.

MILLER, Justice.

This case was submitted to the Industrial Accident Board on a stipulation of the facts as agreed to between the parties, and from which, among other things, it is made to appear:

That Tom Louie, claimant and appellant, about 45 years of age, on the 18th day of October, 1946, and for more than three months prior thereto, was in the employ of the Bamboo Gardens, a restaurant in Boise, Idaho, as a dishwasher therein; that he was casually acquainted with one Fook Lee Hong, another Chinaman, but that said Hong was not a patron of the Bamboo Gardens, nor a customer thereof in that he had never taken his meals thereat and was in nowise interested therein. September 21, 1946, Fook Lee Hong and three other Chinese were arrested on a narcotic charge by officials of the United States; that during the latter part of September 1946, Hong was fined $50 by the U. S. District Judge, at Boise, Idaho, on account of his plea to said charge and thereupon discharged from further custody. Hong was a discharged veteran of World War II. After his discharge for the violation of the Narcotic Act, 26 U.S.C.A. Int.Rev.Code, §§ 2550 et seq., 3220 et seq., he seems to have labored under the delusion that it was thought that he had turned "State's evidence," and that someone was going to kill him. After his said discharge and prior to October 18, 1946, he stated to an Assistant United States District Attorney that members of a tong society to which Tom Louie belonged, and to which Hong did not belong were going to import

472

"hatchet men" from Walla Walla, Washington to Boise, Idaho to kill him because members of such tong thought he had turned State's evidence against his former companions on the narcotic charge; that for several days before October 18, 1946, he was more or less in hiding at the American Legion Building in Boise, Idaho, asserting that someone was going to kill him. The Prosecuting Attorney of Ada County, Idaho, made an investigation and found there were no reasonable grounds for his suspicions that someone was going to kill him, but in his own mind he suffered the delusion that an attempt would be made upon his life.

October 18, 1946, at about 5:45 P.M., Tom Louie, claimant and appellant, received an injury, during his regular hours, and in the course of his employment, and while he was on duty performing the tasks for which he was employed at his employer's place of business, at 107 South 7th Street, Boise, Idaho, in that while taking water glasses from the kitchen to the serving table in the dining room, Fook Lee Hong entered the restaurant by the front door on 7th Street, carrying a loaded 38 caliber revolver, which he brandished in a threatening manner, and then shot the same within the restaurant three times, one of which shots struck Tom Louie, claimant and appellant, in the upper back region, piercing his chest cavity and his lungs. The employer was notified of such accident and injury sustained by said claimant and appellant, during the evening of October 18, 1946, and that a claim in writing, stating the name and address of the employer, the time, place, nature and cause of the injury, signed by claimant and appellant, was filed with the Industrial Accident Board on October 30, 1946; that as the result of the injury sustained, claimant and appellant was hospitalized at St. Luke's Hospital at Boise, Idaho, for a period commencing the evening of October 18, 1946, and until and including November 9, 1946, and that the hospital and medical charges in the sum of $475.55 were paid by claimant and appellant; that claimant and appellant was under medical care at the time of filing the stipulation of facts with the Industrial Accident Board and that at the time he was totally disabled for work and would continue to be so totally disabled for a period of time subsequently to be determined; that he was not then surgically healed and whether or not he will sustain a permanent injury is yet to be determined as well as the degree thereof, if permanent injury results therefrom.

On or about October 21, 1946, a criminal complaint was filed against Fook Lee Hong by the Prosecuting Attorney of Boise, Idaho, and on October 31, 1946, Hong was held by the Committing Magistrate to answer to the District Court for the crime of assaulting Tom Louie with a deadly weapon with intent to commit murder. An information was filed in said District Court, November 1, 1946, charging Hong with an

assault to commit murder. A plea was interposed under I.C.A. Sec. 19-3202, that Fook Lee Hong was insane. The issue was tried to a jury, which returned a verdict of insanity and which was duly filed and entered in said District Court on November 18, 1946. November 20, 1946, the said District Court made and entered its commitment, committing Hong to the State Hospital South at Blackfoot, Idaho, by virtue of his having been found insane as aforesaid.

The Industrial Accident Board considered the stipulated facts and on January 6, 1947, made and entered its findings of fact, rules of law and order dismissing appellant's claim. The findings of fact follow very closely the stipulation. Finding No. 7, among other things, recites as follows: "The sole issue presented is one of law. It is conceded that the accidental injury to claimant Tom Louie arose in the course of his employment by the Bamboo Gardens. The precise issue is whether said accidental injury arose out of such employment." There is no dispute as to the facts.

Paragraph 1 of the Rulings of Law states:

"The claimant has failed by a preponderance of the evidence to show that his accidental injury arose out of his employment."

Paragraph 2 recites:

"So far as the stipulated facts reveal a cause for the maniacal attack of Fook Lee Hong upon the claimant, they show that it was because the claimant was a member of a tong, which Fook Lee Hong in his delusion believed was going to import 'hatchet men' to kill him. There is no evidence that the assault resulting in claimant's injury was connected even remotely with claimant's employment by the Bamboo Gardens, or that the assailant's presence at the Bamboo Gardens was in any wise connected with the business there conducted."

Paragraph 3 says:

"The Board finds and rules as a mixed statement of law and fact that claimant's accidental injury did not arise out of his employment."

The Board then makes the following order:

"Wherefore it is hereby ordered that the claimant take nothing by his claim and petition herein and that said claim be and is hereby dismissed."

February 5, 1947, appellant filed and served his Notice of Appeal from the order of the Industrial Accident Board denying and dismissing appellant's claim for compensation.

The brief of respondent, page 6, says:

"Though the facts are somewhat meager in this case, they indicate that Fook Lee Hong was particularly looking for Tom Louie at the time he shot him, and had either a real or imaginary grievance against him."

474

We fail to find any evidence that would indicate that Fook Lee Hong, at the time he entered the restaurant at which Tom Louie was employed, or at the time he fired the shot resulting in the accidental injury of said Tom Louie, was looking for the appellant and had a real or imaginary grievance against him. There is no evidence to the effect that at the time Hong entered the restaurant that he knew that Tom Louie was employed there or that he would find him therein. In the conversation he had with various officials, no mention was ever made of Tom Louie and the only manner in which Tom Louie seems to have been connected with his delusion, is that Louie was a member of a tong that Hong asserted was going to bring in hatchet men from Walla Walla to kill him.

It may, however, be of no significance as to whether or not said Hong was looking for Tom Louie at the time he shot him and had either a real or imaginary grievance against him. The fact remains that it was an accidental injury and under the Workmen's Compensation Law, claimant and appellant is entitled to receive compensation as a result of said injury.

The Industrial Accident Board was manifestly of the opinion, which opinion is concurred in and now urged by respondents, that it was incumbent upon appellant to establish by a preponderance of the evidence that the accident arose out of his employment. It is admitted it occurred during the course of the employment. The Workmen's Compensation Laws of the State of Idaho were enacted in 1917. The instant case seems to be, more or less, a first impression case in this jurisdiction. The case urged by respondents is, Walker v. Hyde, 43 Idaho 625, 253 P. 1104, 1105. The decision in said case was rendered February 18, 1927, or 20 years ago. The facts are, that Walker was hired to fell trees and cut the same into logs; that at times he went home for lunch and at times his lunch was carried to him; that on the day of the injury he started home for lunch, but met one of his children with the lunch about a half mile from the place where he was working. After eating his lunch, and while returning to work, he attempted to get on a truck going in the same direction, but fell and was killed instantly. The truck was not furnished as a means of transportation. The question for determination was whether the accident resulting in Walker's death arose out of and in the course of his employment. This court in passing on the question involved, stated:

It is well settled that the burden rests upon the one claiming compensation to show by competent testimony, direct or circumstantial, not only the fact of an injury, but that it occurred in connection with the alleged employment, and that it both arose out of and in the service at which the injured party was employed. The Workmen's Compensation Act (C.S., § 6213 et seq.) does not provide compensa-

tion insurance for the employed workmen for accidents or injuries which may befall them other than for such accidents or injuries which arise out of and in the course of their employment. The words 'out of' refer to the origin or cause of the accident, and the words 'in the course of' to the time, place, and circumstances under which it occurred. Rayner v. Sligh Furniture Co., 180 Mich. 168, 146 N.W. 665, L.R.A. 1916A, 22, Ann.Cas.1916A, 386; Hills v. Blair, 182 Mich. 20, 148 N.W. 243.

From the weight of authority, the rule would seem to be that the injury must have been sustained or death caused due to some act or condition connected with the doing of the work, or that the injury must have been sustained or death caused at or near the place at which the injured party was required to work by the terms of his employment and in the doing of the things for which he was employed. The employment of the deceased was to cut down trees and saw them into logs. His place of employment was approximately one-half mile from where he was injured. The accident occurred during the noon hour, at which time deceased had left his place of employment and his employment. No transportation was furnished or was to be furnished by the employer. If the truck had been furnished as a means of transportation, there would be no question about the right of claimants to an award. Flynn v. Carson, 42 Idaho 141, 243 P. 818. Can it be said that the injury to deceased,

when he attempted to jump on the truck, had any relation whatever to the work which he was engaged to do? Under the facts as stipulated, and applying the provisions of C.S., § 6217, to the facts, we are forced to the conclusion that the injury was totally foreign to the work in which deceased was engaged and did not arise out of and in the course of his employment. These two propositions must be present in order that recovery may be had. Gale v. Krug Park Amusement Co., 114 Neb. 432, 208 N.W. 739, 46 A.L.R. 1213."

The author of the foregoing decision then invites attention to the fact that the Workmen's Compensation Act should be liberally construed with a view to effectuate its objects and to promote justice, and that a recovery can be had if the party seeking compensation brings himself within the terms of the act; that each case must be determined upon its particular facts and the law as applicable thereto; and that no hard-and-fast rule can be laid down as controlling; that the authorities are irreconcilable and many of them may be said to be in direct conflict. The modern tendency of the decisions, in keeping with the spirit of the law, is to award compensation in all cases where a liberal construction of the statute would justify it. Even in view of this liberal construction, it is not enough for the applicant to say that the accident would not have happened if he had not been engaged in the particular employment or if he had not been at the

particular place. He must go further and say that the accident arose because of something he was doing in the course of his employment and because he was exposed by the nature of his employment to some particular danger. In support of the foregoing is cited, In re Betts, 66 Ind. App. 484, 118 N.E. 551.

There are two substantial reasons now existing why Walker v. Hyde, supra, is not entitled to consideration in this case, viz.: (a) That it is not in point, and (b) that the Workmen's Compensation Act, Code 1932, § 43-901 et seq., has become more liberalized and the strict construction of years ago is outmoded and has given place to a more liberal and modern construction.

In the case of Goodyear Aircraft Corporation v. Industrial Commission et al., 62 Ariz. 398, 158 P.2d 511, 516, compensation was awarded because the employee in placing a bottle of Cola in a water cooler, which bottle exploded, resulted in the loss of an eye. It was contended that the attempted placing of the Cola in the water cooler for subsequent use by the employee did not arise out of the employment. In passing on said question the court observed:

"It seems to be settled beyond any doubt that an accidental injury arises in the course of employment when it occurs, as in this case, within the period of employment at a time where the employee had a right to be in the performance of his duties and while either fulfilling his duties or engaged in doing something incidental thereto—here in caring for his lunch. * * * . In the present case since the employee had to eat on the premises, it follows that he had a right to properly care for his lunch. We feel, therefore, that the claim of the petitioner that the injury did not occur in the course of the employment is not sustainable.

*     *     *     *     *     *

"* * * No rule is to be adopted and applied which will make ineffectual the evident purpose of the law that those covered by the act who are injured while engaged in industrial work are to be compensated. When a machine is broken it must be repaired. When an appliance is worn out it must be renewed. When, through accident arising out of the course of his employment, a worker is injured, he should be allowed due compensation, and the cost for such compensation is a charge against industry to the same extent as repair to a broken machine." (Citing a number of supporting cases.)

Among other authorities that may be cited, as being to some extent responsible for the liberalization of the common law rules in compensation cases, is the decision of Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522, written by Cardozo, J., and wherein it is said:

"The claimant while engaged in the performance of his duties in the employer's

factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horseplay, and had no knowledge of it till injured. The question is whether the accident was one 'arising out of and in the course of employment,' within the meaning of the statute (Workmen's Compensation Law, § 3, subd. 7; Consol.Laws, c. 67) "That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work 'within the zone of special danger.' * * * The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment." (Citations)

Appellant cites Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417, 419, and which in point of facts is virtually identical with the instant case, in that the claimant was working as a chef and was in the kitchen cooking when a man he had never seen before came into the kitchen, struck a colored man and then struck a knife into the roots of claimant's nose and ran away. The injury resulted in the loss of claimant's eye; that claimant did not talk to the assailant before or after the attack; that the assailant did not work around or have anything to do with the restaurant.

In passing on the question the court, among other things, said:

"We are of the opinion upon the undisputed facts in this case that the claimant's injury arose out of his employment, because the terms and conditions of his employment placed the claimant in the position wherein he was assaulted by the assailant and sustained the injuries from which he suffered. The place where plaintiff was assigned to work was open to all customers of the employer's restaurant or those who sought to go from the restaurant to the bathroom and was practically open to entrance by the public. The place was within the industrial premises of the employer. It is true that claimant's injury was inflicted by a drunken or crazed stranger and was not such a danger as would ordinarily be apprehended by either the employer or the employee. Nevertheless, it was suffered by the claimant when at his place of duty, when upon the industrial premises of his employer, and while he was engaged at the work for which he was employed."

In the case of Hanson v. Robitshek-Schneider Co., 209 Minn. 596, 297 N.W. 19, 21 from which it appears that Hanson with a fellow employe and one of his employers worked overtime and into the eve-

478

ning marking and tagging samples; that Hanson left the place where working to go to a garage to get his automobile some blocks away and was assaulted by two young men he did not know. Shortly thereafter he staggered into the garage bleeding profusely from the wounds inflicted and from which he died some time thereafter. The claim for compensation was challenged on the grounds the accident did not arise out of the employment.

In considering the questions involved, the court said:

"It is significant that in defining compensable accident the workmen's compensation law makes no mention of cause or causation as such. Impliedly, it thereby rejects or at least modifies the standard of proximate causation determinative in tort litigation. Therefore, care must be exercised lest long judicial habit in tort cases allows judicial thought in compensation cases to be too much influenced by a discarded or modified factor of decision. It is apparent that the new standard 'arising out of and in the course of' employment does not require that the latter be the proximate cause of injury. If the legislature had meant that, it would have said so. The words, 'in the course of' impose a requirement in respect to time and place. The phrase 'out of' expresses a factor of source or contribution rather than cause in the sense of being proximate or direct." (Citing cases.)

The case of London Guarantee & Accident Co. v. McCoy, 97 Colo. 13, 45 P.2d 900, 901, 902, is one in which McCoy a sales agent had occasion to bring an automobile bus from Pueblo to Denver. He found it necessary to get in touch with one Mitchell, but only knew his given name as being "Dick." He went to the home of one Decino, Mitchell's father-in-law, whom he knew. Decino was outside the house and McCoy greeted him but got no answer. He inquired of Decino's young daughter if he might use the phone. He entered the house and repeated his request to the other daughters, also asking for Mitchell's telephone number. Having received the telephone number he entered another room, called Mitchell's home and learned that he was absent and while talking with his wife concerning her husband, was stabbed to death by Decino.

Claim for compensation was resisted on the grounds that there was no causation between the accident and the employment. The court held:

"We do not doubt the correctness of the conclusions in the causes herein cited. Under them this accident arose out of McCoy's employment. Such has become the law in this jurisdiction, and, as observed in the Aetna Life case [Aetna Life Ins. Co. v. Industrial Commission, 81 Colo. 233, 254 P. 995], supra, 'the remedy, if any, to be applied, rests with the Legislature.'

\* \* \* \* \* \*

"We have also held, in a 'lightening' case, that 'when one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one "arising out of" the employment of the person so injured.'"

In the case of Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 14, written by Associate Justice Rutledge, in which it is said:

"It is not the peculiar nature of the environment or of the risk, provided it is accidental, but the fact that the work brings the worker within the orbit of whatever dangers the environment affords that is important. It follows also that it is not necessary for the injury or the risk to be 'natural,' 'normal,' or predictable. When it is so, this fact, like 'special danger,' makes causal connection between work and injury more plain. But the very essence of compensation is that the injury be accidental, and that means unexpected.

\*      \*      \*      \*      \*      \*

"It is not contended that the injury did not occur 'in the course of the employment,' since it took place at the very time that Bridges was loading the truck for the employer. But the arguments of the plaintiff are directed against the finding that it 'arose out of' the employment. Plaintiff asserts that the assault by Downey upon Bridges was caused by a purely personal quarrel, which had no relation to their work and, therefore, that the injury is not compensable. This is predicated on the facts as found and on other evidence not mentioned in the findings. That was to the effect that for about two months Downey and Bridges, while at work, had engaged in friendly banter concerning the respective merits of their watches, which was renewed on the morning of the injury. It is claimed that this led to the altercation and made it an entirely personal quarrel, unrelated to the work."

The finding of the commissioner in allowing compensation was upheld.

In the case of Pacific Employers Ins. Co. v. Industrial Accident Commission, 26 Cal. 2d 286, 158 P.2d 9, 10, 159 A.L.R. 313, it appears that Lillian Carmel, employed in a hotel as a bus girl and attending to her duties, sustained injury as the result of the sky-larking of two fellow employees. It was sought to annul the award on the grounds that the question for determination merely concerned the liability of the employer. In connection therewith the court said:

"Admittedly, Lillian Carmel was 'acting within the course of' her employment at the time of injury, and the evidence supports the commission's conclusion that she was 'performing service growing out of and incidental to' her employment. But the insurer argues that the injury was not one

'arising out of' such employment nor 'proximately caused by the employment' within the meaning of the Labor Code.

\* \* \* \* \* \*

"Further indication of this court's determination to liberally interpret the Labor Code to the end of insuring a system of compensation completely covering injuries occurring in the course of employment under the conditions fixed by the Legislature, is found in such recent statements as: 'It is not indispensable to recovery, however, that the employee be rendering a service to his employer at the time of the injury [Citations.] The essential prerequisite to compensation is that danger from which the injury results be one to which he is exposed as an employee in his particular employment' \* \* \* ; 'Acts of the employee for his personal comfort and convenience while at work, such as taking a drink of water, lighting a cigarette, warming himself, etc., do not interrupt the continuity of the employment, and this exception is not limited to acts performed on the employer's premises. \* \* \* Where an injury occurs to an employee during his hours of employment on the premises of an employer and the factual situation may give rise to a reasonable inference that the injury arose out of and in the course of the employment, the finding of the commission in this respect will not be disturbed. \* \* \* ' "

Various authorities "Typical of the modern trend are the conclusions of Judge Cardozo in the leading case of Matter of Leonbruno v. Champlain Silk Mills, supra"; Cassell v. United States Fidelity & Guaranty Company, infra; Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, and various others on the proposition of "arising out of" employment and cited and discussed.

In the case of Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, and 46 A.L.R. 1137, in which it is said:

"The question to be determined in this case is whether a serious and permanent injury to plaintiff in error Cassell had to do with and originated in the business of his employer, the Wichita Theater Company. The facts disclose that the employer's stage manager went on the stage, where Cassell was then engaged in the proper discharge of his regular duties as a stage hand, and in fun snapped the stage manager's pistol, supposed to be unloaded, at other employees and at Cassell, when the pistol fired and injured Cassell.

\* \* \* \* \* \*

"Furthermore, we think that the Legislature of Texas, in declaring what shall not be included within the term, 'injury sustained in the course of employment,' makes it reasonably plain that it was not intended to put such an injury as that sustained by Cassell without the benefits afforded by our statutes; for the Legislature, in excluding injuries 'by the act of God' was particular to fix liability for even an injury so oc-

casioned, if the employee was at the time engaged in the performance of duties which subjected him to a special hazard from the act of God causing the injury. With such a plain intimation of legislative purpose not to deny but to fix liability for an injury arising from a hazard to which the performance of Cassell's duties specially subjected him, we would not be justified in doing otherwise than sustaining the award made him by the district court.

\* \* \* \* \* \*

"'The Workmen's Compensation Law provides for compensation for the death of an employe from "an injury sustained in the course of his employment," and declares that "all other injuries of every kind and character," except certain enumerated injuries from causes or under conditions quite different from any attending the injury to Behnken, shall be included within the term "injury sustained in the course of employment," when having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of the employer whether upon the employer's premises or elsewhere.' Vernon's Sayle's Civ.Stat. (Tex.) 1918 Supp. Arts. 5246—5, 5246—52 [Vernon's Ann.Civ.St. arts. 8306, § 3b, 8307, § 11].

The court also cites with approval the Parramore case, Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 154, 68 L.Ed. 366, 30 A.L.R. 532, 23 N.C.C.A.

744, in which the Supreme Court of the United States says:

"'Workmen's compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured.'

\* \* \* \* \* \*

"Practically every state in the American Union has liberally construed these statutes in order to allow compensation to an employee who was injured while he himself was in the course of his employment. As shown by the court in the Kentucky case we have quoted from, [Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524] 'the courts have been practically unanimous in according to the Workmen's Compensation Acts a broad and liberal construction in order to effectuate their evident intent and purpose.' We are glad to say that the courts of Texas have been no exception to this general rule. We feel that it is greatly to their credit that they have been uniformly liberal in allowing compensation to employees who were

at their work in good faith when injured. We really have no doubt as to the construction of the statute and of its applicability to the facts of this case. But, even if we were in doubt about the construction, we would not hesitate one moment to resolve that doubt in favor of this employee who was at work when he was injured, and who was not in any sense responsible for the injury which befell him. at the hands of a fellow employee who was also at work at the time, even though the latter did digress for a moment to indulge in some horseplay which caused the injury. This construction is certainly more humane, and it is at least in accord with many principles of our law which make every effort to compensate an employee who is hurt without fault on his part."

We have quoted quite at length from the case of Walker v. Hyde, supra. Attorney for respondents concedes that had Walker actually been engaged in felling trees and there and then met with an accidental injury resulting in death, it would have been compensable. We take it, from the holding of a majority of the court, that the injury resulting in Walker's death was totally foreign to the work in which he was engaged, and accordingly, that it did not arise out of his employment is based upon the premise that there was no causal connection between the work in which the deceased was engaged· and his act in attempting to get on the truck at a time when he was not engaged in a matter connected with his employment.

We have suggested, heretofore, that we think the Walker v. Hyde Case, supra, is not in point and for the very reason that Walker was not engaged in any employment for the employer, at the time of the accident and his death.

We have examined the other Idaho authorities, cited by respondents, none of which, we take it, are in point. Parkinson v. Anaconda Copper Mining Co., 56 Idaho 610, 57 P.2d 1216; Wells v. Robinson Construction Co., 52 Idaho 562, 16 P.2d 1059, 1062. The facts stipulated, in the Wells case, supra, show that Wells was working on a public highway for the appellant construction company when he was struck by lightning and instantly killed. The Board found that. the personal injury did not arise out of his employment with his employer, and denied compensation. On appeal the District Court reversed the action of the Industrial Accident Board and awarded compensation.

On appeal to this court, respondent argued that Wells was working in a situation of "special hazard" and peculiar danger. In reversing the District Court, and to a greater or lesser degree, upon the insufficiency of the record, this court held:

"While it is true that courts take judicial notice of the laws of nature and may resort for aid to appropriate books or documents for reference * * * we have been unable to find any authority which supports the theory that a man plowing in a highway, with his hands holding the handles

of the plow, runs any greater hazard from lightning stroke than one not so engaged. In the absence of any proof as to the surrounding circumstances, we are without sufficient data on which to base such a conclusion. For the reasons given we are of opinion, from the record here, that the employee's death did not result from an accident arising out of his employment."

In the case of Logue v. Independent School Dist. No. 33, 53 Idaho 44, 21 P.2d 534, in which respondent, while walking from her home to the school house, fell and broke her hip for which she sought and was awarded compensation. The court affirmed the judgment of award and quoted with approval from the case of Murdoch v. Humes & Swanstrom, 51 Idaho 459, 6 P.2d 472.

In the case of Wade v. Pacific Coast Elevator Co., 64 Idaho 176, 129 P.2d 894, 897, compensation was denied and on appeal this court said:

"The board, after hearing all the evidence, concluded that decedent did not die as the result of an accident arising out of or occurring in the course of his employment; and evidently did not believe, or choose to adopt, the opinions of those experts who said it was probable or possible that death resulted from the exertions of the employee on the date of his death."

The holding of the Board was affirmed.

Other Idaho authorities not cited by respondents, but which we think tend toward a liberalization of the rules, are Totton v. Long Lake Lumber Co. et al., 61 Idaho 74, 97 P.2d 596, and Dutson v. Idaho Power Co., 57 Idaho 386, 65 P.2d 720.

It would seem that the evidence in this case is such as justifies the conclusion that the injury was the result of a risk to which appellant was subjected in the course of his employment, and to which he would not have been subjected had he not been so employed. Appellant was injured not merely because he was a dishwasher in the Bamboo Gardens' restaurant, but because he was an employee within the Bamboo Gardens restaurant, and engaged in the performance of duties which his employment imposed upon him. It was his employment that placed him in the position and environment wherein he was assaulted and sustained the accidental injury. Appellant did not in any manner provoke the assault and attending accidental injury. At the precise time of the injury he was placed and engaged in the business of his employer. There is nothing to show that the brandishing of the pistol and the firing thereof was a deliberate intention to injure appellant. The intention of the assailant from the record may have been limited to "shooting up the place," and that it was a random shot that struck appellant.

There are no provisions under the Workmen's Compensation Laws that prohibit a recovery, except Sec. 43-1002, in that compensation shall not be allowed for an injury caused, "By the employe's wilful in-

tention to injure himself or to injure another; or, 2. By his intoxication." The Workmen's Compensation Law, Sec. 43-902, states: "The common law system governing the remedy of workmen against employers for injuries received in industrial and public work is inconsistent with modern industrial conditions. * * * The state of Idaho, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy * * * and to that end all civil actions and civil causes of action for such personal injuries, and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." The legislature having declared that the common law system is inconsistent with modern industrial conditions, and all civil actions and causes for personal injuries, and all jurisdiction of the courts over such causes are abolished is the impelling reason for the liberalization of the rules governing the common law system.

The order of the board denying compensation constitutes a clear error of law. The order is, therefore, vacated and set aside, with directions to conduct such proceedings as may be necessary in a further consideration of appellant's claim and to make such findings and award as the evidence and law require consistent with the views herein expressed. Costs to appellant.

GIVENS, HOLDEN, and HYATT, JJ., concur.

BUDGE, Chief Justice (concurring specially).

I concur in a reversal of the order of the Industrial Accident Board denying compensation to appellant. Said order should be vacated and further proceedings had, as may be necessary, under the Workmen's Compensation Law, to the end that appellant's claim for compensation be properly determined.

There is but one question here for determination namely: Did the accident and injury arise out of appellant's employment? The question must be answered in the affirmative.

My conclusion is based upon the case of Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417, and cases therein cited.