The TRAVELERS INSURANCE COMPANY, Appellant,

v.

M. A. HAMPTON, Appellee.

No. 4152.

Court of Civil Appeals of Texas.

Eastland.

April 21, 1967.

Rehearing Denied May 5, 1967.

Kerr, Fitz-Gerald & Kerr, Theodore M. Kerr, Midland, for appellant.

Warren Burnett, Robert E. Hoblit, Odessa, for appellee.

GRISSOM, Chief Justice.

In a trial to the court, M. A. Hampton, the father of Tony Hampton, deceased, recovered a judgment against his employer's insurance carrier and it has appealed.

On March 16, 1966, at 10:00 o'clock P.M. Tony Hampton and Wayne Patterson, employees of Pinkie's Inc., were coming out of the back door of Pinkie's store when they were shot and killed by William T. Patterson. Wayne Patterson, Tony's fellow employee, was a cousin of William. The killing arose out of a grievance William had against his cousin Wayne for about five years because Wayne had then struck William with a stick. A doctor testified that, in her opinion, William went to Pinkie's on that fatal night to kill Wayne and the appearance of Tony constituted a detriment to accomplishment of his purpose to kill Wayne which he intended to remove by use of his rifle; that after William had fired two shots each into the bodies of Wayne Patterson and Tony Hampton he pinned his fishing license on their bodies so the officers would arrest him. At the time of the shooting both Wayne and Tony were walking out of the rear door of Pinkie's store, closing it for the night. Tony's duties were to assist Wayne in closing the store at about 10:00 o'clock and in locking the back door and to then mail a written report of the day's business to his employer. When he was killed Tony had the daily report of business in his hand, he was leaving his employer's store through the rear door, out of which said employees were supposed to leave and lock said door, and to then mail said report. The killer did not know Tony. Tony stepped out the door first and was immediately killed by William.˙ A qualified doctor testified that the killer had been suffering from catatonia schizophrenia for five or six years and was mentally ill; that his mental illness was severe enough to impair his con-

tact with reality and he was insane at the time of the killing. There was testimony that William had a difference with Wayne that did not involve Tony and that if anyone else had gone out the back door at the time Tony did they would have been shot. The court found that (1) Tony was an employee of Pinkie's Inc. at the time he was killed; that (4) Tony's accidental injury was received in the course of his employment by Pinkie's Inc. and that (5) said injury was a producing cause of Tony's death. The court further found that when William killed Tony, William was insane and incapable of entertaining a rational intention and incapable of reasoning.

The finding that Tony was then in the course of his employment is the principal act urged by the insurance company as reversible error. The insurance company's first two points are that the court erred in rendering judgment for Hampton because (1) there was no evidence that Tony's injury was received in the course of his employment by Pinkie's Inc., and (2) the evidence was insufficient to support that finding.

In Southern Surety Company v. Shook, Tex.Civ.App., 44 S.W.2d 425, 426, (writ ref.), Thompson and others went upon a lease where Shook was employed to keep a pump running. Shook was permitted to go anywhere while he was on the job provided he could hear the pump running at that distance. Thompson and others went on the lease for the purpose of murdering and robbing Shook. They lured him away from his cabin on a pretended hunting expedition and, while he was still near enough that he could hear the pump, they shot and killed him. Shook's heirs recovered a judgment under the Workmen's Compensation Law and the insurance carrier appealed. It contended that the court erred in finding that Shook's injury had to do with and originated in his employer's business and that Shook was not killed because of reasons personal to him and not directed against him as an employee or because of

his employment within the meaning of Article 8309, Sec. 1. A jury found that Shook was injured in the course of his employment. The insurance company requested a peremptory instruction that said injury was not received in the course of Shook's employment within the meaning of said statute. Judge Hickman, in writing the opinion for this court, pointed out that there was no malice on the part of the killer toward the employee, that, on the contrary, his motive was robbery, possibly commingled with the desire of a depraved mind to "see him kick" and that there had been no previous difficulty. This court concluded that the employee's death was not brought about by "reasons personal to him", citing Vivier v. Lumbermen's Indemnity Exchange, Tex.Com.App., 250 S.W. 417, 418. The insurance company contended that the evidence showed that Shook's injury did not have to do with and originate in the work of his employer, and was not received by the employee while he was engaged in or about the affairs or business of his employer. It was held that Shook's injury resulted from a risk or hazard incident to his work as a pumper for the reasons mentioned, plus the further facts that Shook was on duty twenty-four hours a day and was housed in a shack belonging to his employer near the pump in order that he might always be available. In so holding this court quoted from our Supreme Court's opinion in Lumberman's Reciprocal Ass'n. v. Behnken, 112 Tex. 103, 246 S.W. 72, 73, 28 A.L.R. 1402 the following:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa:

'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' —Pace v. Appanoose County, 184 Iowa, 498, 168 N.W. [916,] 918".

■ Appellant seeks to show that Tony was not in the course of his employment by saying that his injury and death was not of the kind and character that had to do with and originated in the employer's business. There was evidence that Pinkie's Inc. needed two employees to carry out its business of operating a liquor store; that Tony did not choose to work with Wayne but they were required to work together to carry out their employer's business and Wayne's cousin Willie came to Pinkie's store that night for the purpose of killing Wayne; that Tony had nothing to do with William's intention or desire to kill his cousin Wayne. Tony's only contact with the killer was caused directly and solely by his employment, which required him to work with Wayne on March 16, 1966 and, thus, placed him in the danger zone where only an employee of Pinkie's had to be. The killer stated that he had his rifle aimed at the back door and the boy he did not know walked out the back door first and he shot him but that he was there for the purpose of killing Wayne. The evidence sustains the finding that Tony was in the course of his employment by Pinkie's when he met his death. He was assisting in closing and locking the back door, which he had gone through, it being the door he was required to leave by in order to see that it was closed and locked and he had his daily report in his hand to be mailed by him to his employer. These facts are undisputed. They are sufficient to support the finding that Tony was in the course of his employment.

■ In Katz v. A. Kadans & Co., 232 N.Y. 420, 134 N.E. 330, 23 A.L.R. 401, a dairyman's chauffeur was stabbed by an insane man after he had delivered cheese for his employer. The court awarded compensation saying:

"If the work itself involves exposure to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the pro-

tection of the statute. This is the rule unequivocally laid down by the House of Lords in England."

Tony, in discharging his duties, was working with an employee who had an insane cousin who wanted to kill him and Tony was exposed to that danger because of his employment. In Vivier v. Lumberman's Indemnity Exchange, Tex.Com.App., 250 S.W. 417, 418, the court said:

"By reason of the performance of his duty, deceased was placed in a position which contributed to the effectuation of the designs of the assassin, and furnished the opportunity for injury or death that would not have existed but by reason of his situation in the performance of his duty."

It was there held that where a night watchman, while on his employer's premises performing his duties, was assaulted and killed by an unknown person whose motive was robbery, his death was caused by an injury suffered in the course of his employment. In Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417, the Court of Appeals for the District of Columbia held that when a crazed stranger stabbed a chef while he was cooking in a restaurant kitchen which served as a passageway for its customers that his injury arose out of and in the course of his employment. The court said the place where the employee was assigned to work was open to customers of the restaurant. It was on the premises of the employer. Although the claimant's injury was inflicted by a crazed stranger and was not such a danger as would ordinarily be apprehended by either the employer or employee, nevertheless, the injury was suffered by the employee at his place of duty, upon the premises of his employer, while he was engaged in the work for which he was employed, and, therefore, the injury arose out of his employment. In the course of that opinion (on page 419) the court quoted from Katz v. A. Kadans & Company, 232 N.Y. 420, 134 N.E. 330, 23 A.L.R. 401,

what we have heretofore quoted and further that "The risk of being stabbed by an insane man running amuck seems in a peculiar sense a risk incidental to the streets to which claimant was exposed by his employment." It further said that in Frigidaire Corporation v. Industrial Accident Comm., 103 Cal.App. 27, 283 P. 974, where a zone manager with headquarters in San Francisco, after finishing his labors in Reno, proceeded to the station intending to board the San Francisco train but was struck by a wild bullet from a policeman's pistol and died, it was held that his death arose out of his employment and was compensable. It further said that in Greenberg v. Voit, 250 N.Y. 543, 166 N.E. 318, where the claimant's husband, while sweeping the front stoop of a building in performance of his duties as janitor, was killed by gangsters shooting indiscriminately the court held that his death arose out of his employment and was compensable. In Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712, the Supreme Court of Idaho held that an injury sustained by a dishwasher who was shot by an insane person while he was taking glasses from the kitchen to the dining room was sustained in the course of and arose out of his employment and was compensable. In Garcia v. Texas Indemnity Insurance Company, 146 Tex. 413, 209 S.W.2d 333, our Supreme Court considered the case of a store employee who fell and fractured his skull, while he was waiting to lower loading dock gates at the close of the day, by falling against the sharp corner of steel edgings designed to protect a post near which his duties required him to be, that such employee's injury, though his fall was due to an epileptic fit, arose out of his employment within the meaning of the Compensation Act. It further held that where an employee's fall was not caused by a third person's "intentional" act or claimant's intoxication, the cause of the fall was immaterial on the question whether his injuries arose out of his employment. "Where the employee is at his place of work when assaulted by an insane person, his injuries are compensable as arising out of, and in the course of, his employment * * *". 99 C.J.S. Workmen's Compensation § 227, p. 771. In support of the quoted statement said authority cites Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417 and Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712. In a foot note to 99 C.J.S. Workmen's Compensation § 227, p. 771, under the heading "Statute precluding compensation for intentional assault", it is stated that when the act causing injury to an employee in the course of his employment is that of a person incapable of entertaining a rational intention or incapable of reasoning, the statutory exception precluding compensation where the injury is caused by an act of a third person intended to injure the employee, is inapplicable, citing Petroleum Casualty Company v. Kincaid, Tex.Civ.App., 93 S.W.2d 499, writ dismissed 132 Tex. 325, 122 S.W. 2d 1048.

We think there was ample evidence to sustain the court's finding that Tony was in the course of his employment when he received his fatal injury. We have cited authorities which hold that where the injury to an employee is caused by an insane person but is suffered while the employee was in the discharge of his duties the injury arose out of and in the course of the employee's employment. In Garcia v. Texas Indemnity Insurance Company, 146 Tex. 413, 209 S.W.2d 333, 336, our Supreme Court quoted with approval the following statement of the Supreme Court of New Jersey:

"The sound rule is that whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment."

■ We think the court properly found that William Patterson was insane and incapable of entertaining a rational intention and incapable of reasoning and that therefore no exception to compensability contained in Article 8309, Section 1 was ap-

plicable. We conclude that there was evidence of probative force to support such findings. We agree with said legal conclusion. Dr. Williams had served eight years on the staff and as Clinical Director of the Psychiatric Hospital at Big Spring. She testified that Willie was referred to the hospital in March 1966 because he had committed murder; that she and other members of the staff examined him; that in her opinion William had been suffering from catatonia schizophrenia for five years; that he was suffering from mental illness; that such mental illness was severe enough to impair William's contact with reality and he was insane at the time he killed Tony. William gave no reason for murdering Tony. He stated that Wayne had hit him five or six years previously and he decided on the night he killed both Wayne and Tony that he would kill Wayne for hitting him and that he went back of Pinkie's for that purpose, but the boy he didn't know stepped out the door first and he shot him. Certainly, Tony did not provoke the attack. William's action was caused by catatonia schizophrenia, defined as "A benign stupor which frequently may be punctuated by violent outbursts, hallucinosis and panic." William's acts were directed at Tony at the time of the killing only because Tony was in his gun sights and Tony was in that position solely because he was performing his duties at Pinkie's with a fellow employee that William went there to kill.

Under Article 8309, section 1, subsection (2), an employee is not in the course of his employment if he is injured by a third person for personal reasons. Here there was no evidence of a personal reason for injuring Tony within the meaning of such statutory exception. There was no personal reason in the mind of William for killing Tony because in his insane condition he simply found Tony there when he waited for Wayne to come out the back door so he could kill him for striking him five years previously.

Appellant complains of the testimony of Dr. Williams wherein she used the phrase "legally insane." In Barton v. Bailey, Tex.Civ.App., 202 S.W.2d 277, (Ref. n. r. e.), there was testimony relative to sufficient mental capacity in a will contest and on motion for rehearing this court said that an additional reason for holding that reversible error was not shown was that similar testimony was admitted without objection. That is to some extent true here. Furthermore, this was a trial to the court. We do not presume that the court considered and was improperly influenced by inadmissible testimony but we conclude that such testimony was not reasonably calculated to cause and did not probably cause an unjust judgment. In Hudson v. Fuson, Tex.Civ.App., 15 S.W.2d 166, the court quoted the following with approval from Wigmore on Evidence 2d, Vol. 4, Par. 1958.

"'It is easy to see that on principle the opinion of no witness whatever is needed to tell the court whether testimentary capacity existed, because that is a matter of applying a legal definition to the data of the testator's mental condition, and the judge (in theory) needs no assistance on that point * * *'"

We think the court properly found that no exception to the right to recover provided in Article 8309, Sec. 1, applied to prevent an award of compensation in this case. We think the court properly overruled appellant's request for findings that William "intended" to injure Tony; that Tony's injuries were caused by a third person for reasons personal to him and that William's act was not directed at him as an employee of Pinkie's, Inc., or because of his employment, there being competent evidence to the contrary. The only witness to said murders, William Patterson, confessed that he did not know Tony. The Sheriff found no evidence of any communication between them or of any conflict between them. Miss Clark, Tony's girl friend, never heard of

William. In addition to not being acquainted with Tony, William was suffering from catatonia schizophrenia and insane when he shot Tony. The trial court properly found that William was insane, incapable of entertaining a rational intention and incapable of reasoning and that Tony's injury did not come within the exception to liability due to an "intentional" injury inflicted by another. Petroleum Casualty Co. v. Kincaid, Tex.Civ.App., 93 S.W.2d 499, writ dismissed 132 Tex. 325, 122 S.W. 2d 1048; Jefferson Standard Life Insurance v. Myers, Tex.Com.App., 284 S.W. 216, 217; Texas Life Insurance Company v. Plunkett, Tex.Civ.App., 75 S.W.2d 313, 314. Appellant's requested findings of fact on "personal reasons" or "intentions" for the shooting, if complied with, would have put the court in the position of having conflicting findings. Having found that Willie was insane, the court properly found that he did not have personal reasons for killing Tony within the statutory exception. The court did not commit reversible error in refusing to make such requested findings.

We think the court did not commit reversible error in admitting the judgment finding William Patterson insane. This was a trial to the court. If such judgment were improperly admitted there was other ample admissible evidence that Willie was insane when he killed Tony Hampton. It was undisputed. Whether or not it was admissible for the limited purpose of explaining the absence of Willie as a witness, as held in Brewster v. State, 40 Tex.Civ. App. 1, 88 S.W. 858, (writ ref.), we think it does not manifest reversible error because it was a trial to the court and without it there was ample evidence of Willie's insanity and, furthermore, under such circumstances it was not reasonably calculated to cause and did not probably cause an unjust judgment.

All points have been considered. We conclude that reversible error has not been shown. The judgment is affirmed.