UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,

v.

Robin Lee WHITING, Individually and as next of kin on behalf of Dusti Lynne Whiting, a minor, et al., Appellees.

No. 6910.

Court of Civil Appeals of Texas, El Paso.

March 19, 1980.

Rehearing Denied April 9, 1980.

Rassman, Gunter & Boldrick, James P. Boldrick, Leslie G. McLaughlin, Midland, for appellant.

Mullinax, Wells, Baab & Cloutman, P. C., Otto B. Mullinax, Scott A. Henderson, Dallas, for appellees.

## OPINION

OSBORN, Justice.

The wife and surviving children of Paul (Monte) Whiting sued to recover workers' compensation benefits as a result of Mr. Whiting being shot and killed by law enforcement officers while on the premises of his employer. The jury, in answer to the only special issue submitted to it, found that Mr. Whiting received a fatal injury in the course of his employment. We affirm the judgment for the Appellees.

Monte Whiting was hired as a ranch foreman by Howard Brazil in 1973, and he and his wife lived on Brazil's ranch south of Midland, Texas. In 1975, Monte and his wife and a child moved to a trailer house on a trucking company yard owned by Mr. Brazil and located about three miles south of Midland. Mr. Brazil said Monte was "my ramrod" who took care of the ranch, dispatched and looked after the cattle hauling trucks and also worked at Mr. Brazil's livestock auction. The telephone in the office at the trucking company yard had an extension to the trailer house so Monte could take calls at any time. Mr. Brazil testified the trucks operated 24-hours a day, that calls came in day and night, that Monte had to dispatch the trucks and this meant he was on call 24-hours a day. According to Mr. Brazil's testimony, Monte "had the authority to buy equipment. He also had the authority to run my ranches, buy whatever he needed on them. You know, he wasn't limited in his capacity." He was furnished a company vehicle to use in the operation of the businesses.

On October 30, 1976, Monte worked all day at the ranch south of town. He got back to the trucking company yard about 7:00 p. m. He stopped at a liquor store on the way home and bought a bottle of liquor. After he got home, he went out to check on some trucks that were going out that evening. During this time, he began to drink, and he took one telephone call concerning trucking company business. Monte was a collector of antique guns, and while he was in the trucking company yard he fired several shots from a pistol he was carrying. According to his wife, he emptied his pistol by firing into a mudhole near their trailer. Mr. Brazil testified that on one occasion that evening he told Monte that he (Brazil) had everything under control and that he would go ahead and handle everything.

Sometime after the shots were fired, Mr. Brazil called the sheriff's office to report this disturbance, and a deputy sheriff and a highway patrolman drove to the yard in separate vehicles, neither of which had a sign to identify the occupants of the vehicles as lawmen. As Monte walked toward the deputy sheriff's vehicle, his wife said he pointed his gun at no one and that she yelled that the gun was not loaded. The patrolman testified the gun was pointed at the deputy sheriff and that Monte was told to drop his gun. When he failed to do so, he was shot and killed.

The autopsy report established that Monte died from a gunshot wound in the chest and that at the time of death the alcohol content in the blood was .18. The pathologist testified that "he would be considered in the gray zone between not intoxicated and definitely intoxicated."

The Appellant argues together four points of error attacking the legal and factual sufficiency of the evidence to support the jury verdict. The issue and instruction [1] are not attacked, but only the affirm-

1.          "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Paul Fremonte Whiting received a fatal injury in the course of his employment

for Howard Douglas Brazil on October 30, 1976?

'INJURY IN THE COURSE OF EMPLOYMENT' means any injury having to do with and originating in the work, business, trade,

ative answer. In considering the "no evidence," "as a matter of law," "insufficient evidence" and "great weight" points, we do so in accordance with rules set forth in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

The general rule with regard to resident employees is set forth in 1A Larson's Workmen's Compensation Law sec. 24.00 (1979) as follows:

> When an employee is required to live on the premises, either by his contract of employment or by the nature of the employment, and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment.

That basically was the rule applied in *Southern Surety Co. v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd). In that case, an oil field pumper was murdered and robbed while hunting on an adjoining tract of land to that where he lived and operated a pumping oil well. The Court in its opinion on motion for rehearing said:

> Shook actually labored at the well but a few minutes during each twenty-four hours, if we regard labor to mean only the oiling of the engine. He was employed to stay within hearing distance of the pump, with liberties to go to town when desirable. * * * So long as he was there within hearing distance, ready to go to the well when called thereto by observing that the engine had stopped performing, he was in the course of his employment.

In the more recent case of *Insurance Company of North America v. Estep*, 501 S.W.2d 352 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.), the claimant worked as a weigher at a cotton gin and the job required that he be on call 24-hours a day. He sustained injuries as a result of an assault by another employee while preparing a meal one evening in a house provided by his employer. In reaching the result that the injuries were sustained in the course of the employment, the Court stated the general rule basically as set forth in Larson's treatise. The Court said:

> [I]f the terms of the contract of employment require the workman to sleep on the premises of the employer, he is performing services having to do with and originating in the business of the employer while he is on the premises, even when off active duty, if he is doing what might be reasonably expected of him under the circumstances.

Thus, we conclude that Monte was in the course of his employment when killed. He was at that time present on his employer's premises, he was available to take any telephone calls about the trucking company business, and was at the time he was actually shot determining who had entered upon the employer's premises, apparently unaware that the two cars were occupied by lawmen who had been called by his employer.

We also reject any notion that his injury resulted from an act of a third person because of personal reasons. Those who shot Monte did not know him, had no personal

or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

The term 'injury sustained in the course of employment,' as used in this charge, shall not include:

(1) An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

(2) An injury received while in a state of intoxication.

(3) An injury caused by the employee's wilful intention to unlawfully injure some other person.

An injury occurring while the employee is engaged in recreational or social activities is not in the course of employment unless such activities take place with the employer's express or implied permission at the place of employment or in the immediate vicinity thereof while the employee is required to hold himself in readiness for work.

Answer 'We do' or 'We do not'.

ANSWER: We Do"

motive to injure him, and were present only because of a call from his employer. The necessary "personal" reason was non-existent in this case. *Vivier v. Lumbermen's Indemnity Exch.,* 250 S.W. 417 (Tex.Com. App.1923); *Commercial Standard Insurance Company v. Marin,* 488 S.W.2d 861 (Tex. Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Travelers Insurance Company v. Hampton,* 414 S.W.2d 712 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.).

We also reject the contention that Monte was not in the course of his employment because he was intoxicated. There was substantial testimony from his wife and her sister that shortly before the shooting he was sober. There is no dispute but that he had been drinking before he was killed. The jury could have believed from some of the testimony of the pathologist that he was drunk and intoxicated. Had they done so, the evidence would have supported their verdict. But, the testimony from Dr. Madsen was opinion evidence which was not conclusive and which the jury was not compelled to believe. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970); *Sanchez v. Wade,* 514 S.W.2d 812 (Tex.Civ. App.—El Paso 1974, no writ).

We conclude that the evidence does support the jury answer to Special Issue No. 1; that answer is not against the great weight and preponderance of the evidence, and the proof does not show as a matter of law that Monte was not in the course of his employment. Much of the evidence is conflicting; if it were not, there would be little need for a jury. The jury which heard the conflicting testimony resolved the conflicts against the compensation carrier. Points of Error One through Four are overruled.

The judgment of the trial Court is affirmed.