## PAWNEE ICE CREAM CO. et al. v. CATES et al.

No. 23545. Opinion Filed May 9, 1933.

Rehearing Denied May 31, 1933.

Clayton B. Pierce, A. J. Follens, and Truman B. Rucker, for petitioners.

Charles Besly, for respondents.

BAYLESS, J. J. R. Cates owned and operated the Pawnee Ice Cream Company at Pawnee, Okla. His son, Haskell Cates, claimant herein, was employed by him in an engineering capacity in this business. On December 12, 1930, the father, impelled by a sudden and violent homicidal mania, told claimant there was something wrong with the boiler in the engine room, followed claimant into that part of the plant, and assaulted claimant by striking him on the head with a hammer. Claimant was struck several blows.

Claimant lost no wages while disabled, and the only award of the Commission covered the hospital and medical bills. The employer and insurance carrier appealed from this award and will be referred to herein as petitioners. All of their contentions and arguments may be considered under their fourth assignment of error:

"The injury upon which this claim is based was not an injury 'arising out of the employment,' and the State Industrial Commission had no jurisdiction and were without authority of law to make an award against your petitioner under the Workmen's Compensation Law."

It may be said at once that petitioners admit that the injury was accidental, and arose "in the course of the employment." We have said:

"A compensable accidental injury must disclose, from its circumstances, the existence of two essential elements: It must have resulted 'in the course of' the employment, and it must also have aristn 'out of' the employment. The absence of either of these essential elements destroys the application thereto of the beneficent provisions of the Compensation Law." Lucky-Kidd Mining Co. v. Ind. Com., 110 Okla. 27, 236 P. 600.

Therefore, the question here to be considered is: Is an accidental injury, in the course of the employment, occasioned by an assault on the employee by the employer, when insane, one arising "out of the employment?" The earliest Oklahoma case in-

volving an assault on an employee "in the course of the employment" is Willis v. State Ind. Com., 78 Okla. 216, 190 P. 92. In that case the act of the fellow servant was treated as an assault, and this court held the injury compensable, saying:

"Where an employee, during an interval in his work, was warming himself by a fire on the premises of the employer, and was injured by the explosion of a piece of dynamite containing a cap, brought there and thrown into the fire by a fellow employee, who picked up the dynamite and threw it into the fire to see if it would explode, the injury received by the employee arose out of and in the course of his employment, under the Workmen's Compensation Law."

The next case was that of Stasmos v. State Ind. Com., 80 Okla. 221, 195 P. 762, where an employee was assaulted by a foreman while "in the course of the employment." We held:

"It is now well settled in these workmen's compensation cases that the facts that an injury is the result of the willful or criminal assault of another does not prevent the injury from being accidental. L. R. A. 1916A, 309, and notes; L. R. A. 1917D, 112; Western Indemnity Co. v. Pillsbury (Cal.) 151 P. 398; Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 P. 491; Re Heitz, 218 N. Y. 148; L. R. A. 1916D, 641; Willis v. Pilot Butte Mining Co. (Mont.) 190 P. 124; 1 C. J. 390, and cases cited. * * *

"It seems equally clear to us that the facts in this case show the petitioner's injury arose out of and in the course of his employment. As we have seen from the brief statement of the case hereinbefore set out, the petitioner was in the act of leaving the mine, following the usual course of exit from his working place to the foot of the shaft for the purpose of taking the cage to the top. Tom Woods, the assistant foreman, was there directing the men, and while the test of liability under the statute is not the dereliction of the master, or that of his representative acting within the scope of his authority, it seems to us that it was entirely proper for the petitioner to complain to the mine foreman concerning the delay in the arrival of the cage.

"Our statute, in so far as it provides for compensation for the 'disability of an employee resulting from accidental personal injury sustained by the employee, arising out of and in the course of his employment, 'is almost, if not identical, with the British statute upon this subject, and with the statutes of practically every state in the United States, except Washington, which has a broader provision on the foregoing paragraph of our statute.

"It is the decided weight of authority in Great Britain and the United States that an assault by a third party, or an assault of the employer arising out of and in the course of the employment, resulting in an injury and disability, is such an injury as comes within the Workmen's Compensation Law. L. R. A. 1917B, 112, and notes; Willis v. State Ind. Com., 78 Okla. 216, 190 P. 92; Willis v. Pilot Butte Mining Co. (Mont.) 190 P. 124, and many other cases."

A recent case called to our attention involving an assault by a superior or employer upon the employee is that of Okla.-Ark. Tel. Co. v. Fries, 128 Okla. 295, 262 P. 1062. In that case the employee was injured in the melee and confusion attendant upon an attempt by the president and general manager of the company to kill the plant superintendent, secretary-treasurer, and the employee, by shooting them with a pistol. We reviewed the former holding of this court and held:

"The third and more difficult question to be determined is, whether or not the injuries of the claimant arose out of her employment. * * *

"The record affords no satisfactory answer as to why the officer of the respondent company saw fit to commit the atrocious assault upon the claimant. However, just prior to the shooting, the officer of petitioner company fastened the doors of the office and stated that he desired to see the claimant and the other party present a few minutes, and made inquiry about the business, and stated: 'I think I am being mistreated.' The business referred to or discussed, so far as the record shows, or the reasonable inference therefrom, appears to have been the business of the respondent company, the business of the company in which the three participants were engaged as officers and employees. We might guess or surmise that the injury was suffered by some fact or condition not connected with or growing out of the company's business or employment, arising from something personal between the assailant and the one assaulted, but we find no testimony referring or pointing to anything other than the company's business or employment upon which to base such surmise. * * *

"The Industrial Commission concluded and found that the injury to claimant here arose out of and in the course of the employment. Reasonable men might have reached a different conclusion than that reached by the Industrial Commission, but we are unable to say that other reasonable men would not reach the same conclusion and finding. * * *"

The analogy between that case and this case is fairly close. In that case the superior officer of the injured claimant invited

her into the room in which she was shot, upon a pretext of discussing the business of the company, which he had a perfect right to do; in this case, the employer of the injured claimant directed him to the engine room, upon the pretext of inspecting and correcting boiler trouble, which he had a perfect right to do. We feel that the analogy is so close that, if the injury in the Fries Case arose "out of the employment," the injury in this case arose out of the employment.

The most recent case is that of Dillon v. Dillman, 133 Okla. 273, 272 P. 373, and it reviews and reaffirms the rules announced in the other cases. It involved an accidental injury to an employee who was shot "in the course of the employment" by a drunken stranger, because he refused to permit such stranger to take property belonging to the employer. We closed our opinion in that case by saying:

"The authorities hold that such an injury was an accident. Being an accident, it is immaterial from what source it came. Had he been injured by a kick from one of the mules, or from any other source, it would have been an accidental injury, and if injured, as in the case at bar, while discharging his duty as an employee, he would be entitled to compensation."

We do not believe that the fact of insanity on the part of the employer varies the rule. The case of Willis v. Ind. Comm., supra, involved "horseplay" on the part of another employee not joined in by the injured employee; the case of Stasmos v. State Ind. Com., supra, involved an assault when both foreman and injured employee were engaged in a quarrel; in the Okla.-Ark. Tel. Co. v. Fries Case, supra, we commented upon the absence of apparent cause as to the motive of the person committing the assault; and in the case of Dillon v. Dillman, supra, the assault was evidently caused by a drunken rage. This variety of causes or motives impelling the assaults is certainly broad enough to naturally and reasonably include an assault committed by an employer in a fit of sudden insanity.

Under the facts of this case and the rules of law announced by these authorities, the award must be affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and WELCH, JJ., concur. RILEY, C. J., and BUSBY, J., absent.