In the Matter of the Claim of RAGNHILD CHRISTIANSEN, Appellant, against HILL REPRODUCTION COMPANY, Employer, and ÆTNA CASUALTY AND SURETY COMPANY, Insurance Carrier, Respondents.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, July 2, 1941.

*Moses, Nehrbas & Tyler* [*Charles J. Nehrbas* of counsel], for the appellant.

*Frank L. Ward,* for the employer and insurance carrier, respondents.

· *John J. Bennett, Jr., Attorney-General,* for the State Industrial Board, respondent.

HEFFERNAN, J. Claimant, the widow of Harold Christiansen, deceased, has appealed from a decision of the State Industrial Board denying her claim for death benefits under the Workmen's Compensation Law.

The facts are undisputed. Where, as here, compensation is claimed for accidental death and the facts are not in controversy, the issue whether the deceased received injuries which arose out of and in the course of his employment becomes a question of law.

On September 25, 1939, and for about ten years prior thereto, claimant's husband was employed by respondent Hill Reproduction Company as a salesman in the city of New York. His employment required him to interview patrons of his employer at times and places designated by them. On the date in question and in the regular course of his employment he went to the Greenwich Tavern to meet the advertising editor of the *Telephone Monthly Review,* a periodical published by the New York Telephone Company. The representative of the telephone company testified that he had made the appointment to meet deceased at about five P. M. and instructed the latter to wait for him.

Deceased arrived at the appointed place about four-thirty P. M., and while waiting for his customer to arrive an unknown man entered the tavern, went up to the bar, had two or three drinks of beer, and suddenly, without any provocation and for no known reason, drew a revolver from his pocket and shot at and wounded the bartender, shot at but missed the proprietor, shot at and fatally injured deceased. The murderer was pursued but has never been apprehended.

On these facts the State Industrial Board found that although the injury causing the death of claimant's husband occurred in the course of his employment it did not arise out of such employment. With this conclusion we are unable to agree. The courts have said again and again that the words " arising out of and in the course of the employment " should be given a broad and liberal construction.

Claimant's husband was killed in a public place where his presence was required by his employer. His duties made it necessary that on some occasions he should be on the public highways, on others in public conveyances, and again on others in public buildings. He had no option. It was mandatory that he should interview those doing business with his employer at places where they could be found. He was subject to accidental risks in going to,

remaining at and returning from those places where his duties were to be performed.

On the occasion in question his employment called him to a public tavern. For the time being that tavern was virtually his workshop. He was then exposed to the dangers incident to his presence there in the same manner that a factory workman is subjected to the perils of the factory.

The facts in this case are analogous to the status of an employee whose work involves exposure to the perils of the street. Such a workman travels the public highways when on his employer's business under the protection of the Workmen's Compensation Law. (*Matter of Katz* v. *Kadans & Co.*, 232 N. Y. 420.)

In the case of street accidents the older authorities generally held that the Compensation Law did not authorize an award in case of injury or death from a peril which is common to all mankind, or to which the public at large is exposed. Later cases repudiate the labored explanations of the earlier ones with the result that the whole subject has been greatly confused.

The strict construction of the earlier view gave rise to an exception in the case of workmen whose duties required them to be continually on the street, the courts basing the exception on the ground that it could be foreseen that their use of the streets involved peculiar hazard from street perils. The tendency of the later cases towards a more liberal construction of the statute is reflected in the view now most generally taken as to street risks. The majority of the courts in this country permit the recovery of compensation where the employee received a street injury while in the course of his employment, although the employment may not have required his presence on the street continually, but only occasionally, or even on the one occasion on which he was injured.

In the leading case on this subject (*Dennis* v. *White & Co.*, [1917] A. C. 479; Ann. Cas. 1917E, 325; 15 N. C. C. A. 294), where the House of Lords allowed compensation to an errand boy who used a bicycle belonging to the firm on his errands and who was injured when his bicycle came into collision with a motor car while he was on an errand for his employers, Lord FINLAY, L. C., said: "The risk of collision under such circumstances is incidental to the use of a bicycle; it is a risk inherent in the nature of the employment, and it was the cause of the accident. It follows that the accident arose out of the employment. It is quite immaterial that the risk was one which was shared by all members of the public who use bicycles for such a purpose. Such as it was, it was a risk to which the appellant was exposed in carrying out the orders of his employer. If a servant in the course of his

master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment. The frequency or infrequency of the occasions on which the risk is incurred has nothing to do with the question whether an accident resulting from that risk arose out of the employment. The use of the streets by the workman merely to get to or from his work of course stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the perils of the streets, the workman can recover for any injury so occasioned. * * * But when a workman is sent into the street on his master's business, whether it be occasionally or habitually, his employment necessarily involves exposure to the risks of the streets and injury from such a cause arises out of his employment. There is nothing in the Act about any necessity for showing that the employment involves an extra or special risk, and once it is clear, as it is in the present case, that the accident was the result of a risk necessarily incidental to the performance of the servant's work, all inquiry as to the frequency or magnitude of the risk is irrelevant. It is quite immaterial whether the nature of the employment involves continuous or only occasional exposure to the dangers of the streets. The frequency of the exposure to a risk increases the chance of the occurrence of an accident, but it has no bearing on the question whether it arose out of the employment, which is settled by the fact that such exposure was one of its terms, whether on many occasions or on one."

The rule just quoted was expressly approved by the Court of Appeals in *Matter of Katz* v. *Kadans & Co. (supra)*. In the latter case the court held that a chauffeur who, while driving his employer's car on his employer's business, was stabbed by an insane man who was being chased through the streets, was properly awarded compensation on the theory that his injuries arose out of his employment. Judge POUND, writing for the court, said:

" If the work itself involves exposure to perils of the street, strange, unanticipated and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. * * *

" The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer. The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals or violent madmen are afoot therein

as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad. * * * The risk of being stabbed by an insane man running amuck seems in a peculiar sense a risk incidental to the streets to which claimant was exposed by his employment. * * * But the fact that the risk is one to which every one on the street is exposed does not itself defeat compensation. Members of the public may face the same risk every day. The question is whether the employment exposed the workman to the risks by sending him onto the street, common though such risks were to all on the street."

In *Palmer* v. *Main* (209 Ky. 226; 272 S. W. 736), in allowing compensation to an apartment house janitor who was struck by an automobile on the street when he had been sent on an errand by his employer, the court said: " But the point is made that the accident to Main did not arise out of his employment. It is true that many of the authorities lay down the broad rule that an accident does not arise out of the employment where it occurs upon the street from causes to which all other persons upon the street are likewise exposed, while others recognize the same rule, but make an exception in the case of messengers, collectors, canvassers, draymen and others, who, by reason of the fact that they are obliged to be continuously on the street, or at least spend a considerable portion of their time there, are subjected to street dangers to a greater extent than the public in general. * * * In our opinion, neither the general rule nor the exception is supported by sound reasoning. It is at once apparent that if all accidents due to risks to which the general public are subjected are to be excluded, many employees will be deprived of the benefits of the act. Moreover, if the time that the employee is exposed to the street danger is to control, not only will there be great confusion in drawing the line of demarcation, but we shall have many cases where compensation will be allowed one employee and denied to another, although engaged in the same character of work at the time of the accident. Not only so, but the result will be that an employee who is entitled to the protection of the act while on the master's premises will forfeit that protection whenever he is sent into the street on a special errand requiring only a small portion of his time. We have, therefore, reached the conclusion that an accident arises out of the employment within the meaning of the Workmen's Compensation Act if it was the direct and natural result of a risk reasonably incident to the employment in which the injured person was engaged, and many courts take the same view of the question."

In *Matter of Thomas* v. *United States Trucking Corporation* (224 App. Div. 805; affd., 250 N. Y. 567) it appeared that claimant's husband while employed as a truck driver by defendant was required to deliver a truck load of freight at a pier on the North river in the city of New York. While he was engaged in assisting to unload the truck a watchman on the pier drew a revolver and fired at him, causing his death. The assault was found to be without provocation, not due to personal altercation, and wholly unconnected with defendant's business. Nevertheless an award was upheld.

In *Matter of Wakefield* v. *World-Telegram* (249 App. Div. 884; affd., 274 N. Y. 517) it appeared that claimant's husband was employed as a chauffeur by the appellant, World-Telegram, and his work consisted of making deliveries by motor truck of newspapers in New York city. On May 6, 1935, after making such deliveries, he drove the truck back to the garage in which appellant kept its trucks when not in use. While seated in the truck, waiting at a gasoline pump to have it refueled, he was shot by another chauffeur employed by appellant, off duty for that day and in an intoxicated condition, and died on May 14, 1935, as a result thereof. The State Industrial Board found that deceased did not initiate the assault upon himself, was in nowise the aggressor, and that such assault arose out of and in the course of his employment. This court and the Court of Appeals upheld the award.

In view of the foregoing authorities and aided by the presumptions contained in section 21 of the Workmen's Compensation Law it seems to us that the State Industrial Board was required to find that the injury suffered by claimant's husband arose out of his employment. Concededly claimant would have been entitled to an award if her husband had been struck by an automobile, " stabbed by an insane man running amuck," or injured through the act of " street brawlers, highwaymen, escaping criminals or violent madmen " or by police officers shooting " at fugitives fleeing from justice," while traveling the public highways in the city of New York, in his employer's business and at the latter's direction on the prescribed route to or from Greenwich Tavern. Here the employee was required to perform his duties in a public place, located on a public highway. We can see no reasonable or sensible distinction between the case of an employee, at the time engaged on the mission of his employer, who comes to his death by the bullet of a gunman on the public highway and one who, likewise employed, meets the identical fate in a public tavern. The risk of encountering a murderer or homicidal maniac in a place where liquors are dispensed is just as great, if not greater, than it

would be upon the street. If the duties of his employment had not required claimant's husband to go to this particular tavern at this particular time he would not have sustained the fatal injury. He lost his life through the act of a lunatic or a criminal at a place where his employer directed him to be for the purpose of promoting the latter's interests. Injuries and death occurring in similar situations on a pier, on the street, in a garage, and on the employer's premises have been held to be within the protection of this beneficent statute. We are convinced that this claimant is entitled to like consideration.

The cases cited by respondents are all distinguishable. It would serve no useful purpose to discuss them in detail.

The decision appealed from should be reversed, with costs to appellant against respondents, and the matter remitted to the State Industrial Board with instructions to make an award in claimant's favor.

HILL, P. J., CRAPSER, BLISS and FOSTER, JJ., concur.

Decision reversed, with costs to appellant against the respondents, and matter remitted to the Industrial Board with instructions to make an award in claimant's favor.