(No. 6947 March 25, 1942)

DEHLIN et al. v. SHUCK et al.

(124 Pac. (2d) 244)

Earl E. Reed for Appellant.

Frank L. Benson for respondents, Lloyd Lumber Company and State Insurance Fund.

MORGAN, J.—This proceeding was commenced by Paul Dehlin, claimant, against Sid Shuck, Lloyd Lumber Company and State Insurance Fund, to recover compensation for injury, by accident, arising out of and in the course of his employment by Shuck and the company. State Insurance Fund is the company's insurer from

liability for injuries, to its employees, by accident, arising out of and in the course of their employment.

May 13, 1941, a hearing was had before the Industrial Accident Board at which claimant, Dehlin, and defendant, Shuck, appeared without counsel, and Lloyd Lumber Company and State Insurance Fund appeared by their attorney, Frank L. Benson, Esq. At the conclusion of the hearing, held that day, the case was taken under advisement by the board. May 15, 1941, the board, of its own motion, entered an order making Robert Foster a party defendant and gave notice to him, and all other parties, that a further hearing would be had May 27, 1941, at ten o'clock A. M.

On the last mentioned date a further hearing was had whereat claimant was present without counsel. Earl E. Reed, Esq., appeared as attorney for defendant, Shuck, and C. L. Hillman, Esq., and Frank L. Benson, Esq., appeared as attorneys for defendants, Lloyd Lumber Company and State Insurance Fund. Defendant, Foster, appeared without counsel. At the close of the hearing, the board again took the case under advisement and, June 3, 1941, made findings of fact and rulings of law and entered an order to the effect that claimant's claim for compensation against defendants, Lloyd Lumber Company and State Insurance Fund, be denied and his application, as against them, be dismissed; that the defendants, Sid Shuck and Robert Foster, pay to claimant compensation at the rate of $7.92 per week from and after April 5, 1941 until June 13, 1941, and thereafter weekly compensation of $7.92 for 99% of fifty-one and a half weeks, and an additional sum of $40.00 for expenses incurred for medical and surgical treatment; also that defendants, Shuck and Foster, immediately pay to the state treasurer, for deposit into the Industrial Special Indemnity Fund, $8.16.

June 24, 1941, counsel for defendant, Shuck, filed a motion for an additional hearing, on the ground of newly discovered evidence. The additional hearing was denied and defendant, Shuck, alone, has appealed from the order denying it, and from the award.

The evidence shows, without contradiction, that claimant, Dehlin, prior to April 5, 1941, was employed by

Shuck to assist in operating a wood saw, sometimes called a buzz saw, owned by the latter; that while sawing wood in the lumber and wood yard of defendant, Lloyd Lumber Company, on the last mentioned date, claimant's left hand, by accident arising out of and in the course of his employment, came in contact with the saw, resulting in the loss of parts of the first, second and third fingers thereof. The question presented by this appeal is as to whether defendant, Lloyd Lumber Company, and its surety, State Insurance Fund, are liable for compensation for the injury.

It is the contention of Lloyd Lumber Company and State Insurance Fund that the former was not the employer of appellant, Shuck, nor of Dehlin, the injured employee; that Foster entered into an oral agreement with the company to sell and deliver to it a quantity of stove wood, in twelve-inch lengths, to be delivered at its yard, for which it was to pay him $6.50 per cord; that for the convenience of Foster the company permitted him to haul the wood in four foot lengths and saw it in the yard.

The wood was purchased from Mr. Nelson. It is appellant's contention Nelson refused to sell the wood to Foster and that it was purchased from him by Lloyd Lumber Company; that Foster hauled the wood for the company, and delivered it at its yard in Nampa and that he, appellant, sawed it into twelve-inch lengths at the agreed price of fifty cents per cord.

Appellant testified to a conversation he had with Dewey Keating, the company's yard manager or foreman, about the time he started sawing the wood, as follows:

"The first day I worked there Mr. Keating came over and asked me about insurance on my men and I told him, 'no, I didn't have any' and he said 'we will see what we can do' and he went over and as I remember the conversation he asked Mr. Lloyd whether he would cover us with insurance, which he said he would while we were working in the yard.

\* \* \* \* \* \* \* \* \* \*"

Mr. Langley, chairman of the board: "Have you anything else you wish to say?

"A. Only that there is one witness present to the effect that Mr. Keating told us Mr. Lloyd said he would take care of the insurance while we were working in the yard."

On cross-examination, he testified:

"Q. Did you talk to Mr. Lloyd personally about insurance?

"A. I did not.

"Q. Your conversation was solely with Mr. Keating?

"A. Yes.

"Q. Did I understand you to say Mr. Keating in turn informed you that Mr. Lloyd has said you were covered with insurance?

"A. Yes."

This testimony was given at the first hearing, when Shuck was without counsel.

At the second hearing, Keating testified, on direct examination, with respect to the conversation about insurance:

"Q. Will you state that conversation as you remember it?

"A. I asked him if he was insured and he said 'no.' I told him he should have insurance and I said I would go and ask Mr. Lloyd if you are covered here. Mr. Lloyd said he would have to be working for us to be insured and I went back and told Mr. Shuck that.

"Q. Do you recall the exact words?

"A. Yes. I said, you will have to be working for us in order to be covered by insurance."

On cross-examination, he testified:

"Q. Just what was Mr. Shuck doing at the time you first mentioned this insurance?

"A. Taking the wood off the saw.

"Q. Operating it alone?

"A. No. There were two other men working with him.

"Q. Who were they?

"A. I don't know.

"Q. During the time of the operation of the machine could you hold the conversation there with him at the machine?

"A. He stopped and I called him to one side.

"Q. Repeat to me that conversation as near as you can.

"A. I asked him if he was covered with insurance.

"Q. Did he answer?

"A. He said he wasn't.

"Q. Then what did you say?

"A. I told him he better investigate and find what he could do about it.

"Q. Did Mr. Shuck say anything after that?

"A. He said how he could go about it.

"Q. What did you say?

"A. I told him he should get insurance and to talk to Mr. Lloyd and he would tell him how.

"Q. What else was said?

"A. I went over to the yard and asked Mr. Lloyd if he was protected.

"Q. You didn't tell Mr. Shuck you were going to find out?

"A. No. I told him I would see what I could find out about it.

"Q. You had told him you would find out?

"A. Yes.

"Q. And you went to discuss the matter with Mr. Lloyd?

"A. I did.

"Q. Did you talk to Mr. Lloyd?

"A. I did.

"Q. Then after you talked to Mr. Lloyd did you talk to Mr. Shuck?

"A. I did.

"Q. How long after the original conversation was that?

"A. Perhaps ten minutes.

"Q. When you talked to Mr. Shuck was—what was the first thing you said?

"A. I said to be covered with our insurance you would have to be working for us.

"Q. You called him to one side?

"A. Yes.

"Q. There was no one else within hearing?

"A. There was those two men working for him.

"Q. Do you recall telling Mr. Shuck that the insurance Mr. Lloyd had did cover Mr. Shuck's operations?

"A. No.

"Q. Did you—would you say positively at this time you never said anything to that effect or that could be construed that way?

"A. No. I would not.

"Q. It is possible then Mr. Shuck from the conversation you had with him could have understood he would be covered by insurance?

"A. He could have."

Counsel for appellant supported his motion for additional hearing with the following affidavit:

"STATE OF IDAHO }ss.
COUNTY OF CANYON}

"EARL E. REED, being first duly sworn on his oath deposes and says:

"That he is the attorney for Sid Shuck one of the defendants in the above entitled matter; and further that he was employed by Sid Shuck, defendant, on or about the 26th day of May, 1941, to represent Sid Shuck in the matter of the hearing before the Industrial Accident Board in the above entitled matter; that prior to said time he was unacquainted with the facts and circumstances in the above entitled matter and subsequent to the hearing on the 27th day of May, 1941, your affiant discovered the following facts which were not presented at the hearing, and to the information and belief of your affiant do not appear of record in the transcript of the evidence of either the original hearing May 13, 1941, or the May 27th, 1941 hearing; that said evidence is approximately as follows:

"That two original workers on the saw of Mr. Sid Shuck, Kenneth Vincent and Alex Hinkel, were present at the time of the original sawing of wood by Mr. Shuck under the agreement and the LLOYD LUMBER COMPANY YARD; and that both of said persons above named heard the representation of DEWEY KEATING, the yard man for Lloyd Lumber Company, state and represent to Sid Shuck and to them that they were covered by

the Lloyd Lumber Company insurance; and that the insurance would take care of them if it were necessary; and further that Mr. Nelson, from whom the wood was purchased, refused to deal with Mr. Foster and refused to make the sale of said wood directly to Mr. Foster; that Mr. Dewey Keating, the yard man for the Lloyd Lumber Company, discussed the matter of price with Mr. Nelson and agreed upon a price of Four Dollars ($4.00) per cord, and agreed that Lloyd Lumber Company would pay Mr. Nelson directly and not through Mr. Foster; and it was upon this condition, and this condition alone, that the sale was consummated to the Lloyd Lumber Company; and further that the deal for the purchase of the wood was consummated between Dewey Keating of the Lloyd Lumber Company and Mr. Nelson, and not between Mr. Foster and Mr. Nelson;

"That your affiant verily believes that such evidence being properly presented before the Board will alter the Findings of Fact and Rulings of Law reached by the Board in the above entitled matter; and that your affiant verily believes that such information is vital and necessary to the final determination of the above entitled matter."

██ ██ Whether this would be a sufficient showing to support a motion for a new trial of a civil action is not very important. In *Feuling v. Farmers' Co-operative Ditch Co.*, 54 Ida. 326, 334, 31 Pac. (2d) 683, 686, we said:

"It may not be amiss to call the particular attention of the Industrial Accident Board to the fact that it is a fact finding and administrative body; that whenever a claim is properly presented to it for investigation and determination, that the statute expressly provides, Sec. 43-1404, I. C. A.: 'The board, or the member of the board to whom the matter has been assigned, shall make such inquiries and investigations as shall be deemed necessary * * *' The Workmen's Compensation Law itself provides, and this court has repeatedly held that the same shall be liberally construed for the benefit of those whom it is intended to protect. Strict rules of procedure are not required and the board shall so conduct its duties as to promote justice and not pervert the same. When a claimant has failed or overlooked submitting evidence to

establish the amount of compensation to which he is entitled, and there is no question but that he is entitled to compensation, then it is the duty of the board to call attention to such failure and see to it that whatever evidence is available to establish such fact is presented, and then make the necessary findings of fact."

In *Nistad v. Winton Lumber Co.,* 59 Ida, 533, 537, 85 Pac. (2d) 236, 237, we said:

"Where the parties to the controversy fail to produce satisfactory evidence, for instance, of the cause of death, as the board, in effect, found in the case at bar, that is to say, where the parties fail to satisfactorily establish whether an employee died from disease or as the result of an injury sustained by accident, or where the parties fail to produce satisfactory evidence upon any question of fact material and necessary to the decision of the case, then, and as pointed out in *Pierstorff v. Gray's Auto Shop,* 58 Ida. 438, 450, 74 Pac. (2d) 171, '*It becomes the duty of the board to make full and exhaustive inquiry (Feuling v. Farmers' Co-operative Ditch Co.,* 54 Ida. 326, 334, 31 Pac. (2d) 683), and to that end the board may not only examine any competent witness at the conclusion of his direct and cross examination upon all matters material and relevant to any issue, *but it may also subpoena and examine other competent witnesses.*' " See, also, (*Watkins v. Cavanagh,* 61 Ida. 720, 107 Pac. (2d) 155.)

 The Industrial Accident Board had jurisdiction of the case from the time of its commencement until an appeal was taken from the order and award, during which time it was the board's duty to arrange for hearing, and to hear, such evidence as was known to be available and to be necessary to a proper decision of the case.

 During the first hearing of this case, appellant testified there was a witness to the conversation, other than the parties thereto, between Keating and himself, as to what Lloyd said with respect to insurance. At the second hearing, Keating testified there were two such additional witnesses to that conversation. Upon learning of these witnesses, it was the duty of the board, of its own

motion, if the parties made none, to take steps to produce the witnesses and secure their testimony.

The question of the ownership of the wood, prior to and at the time it was being sawed, is also important in determining whether defendants, Lloyd Lumber Company and State Insurance Fund, are liable for the compensation due the claimant. The testimony of Mr. Nelson, as to whether he sold the wood to the company or to Foster, should be taken.

The award and the order denying the motion for additional hearing are reversed and the board is directed to reopen the case and grant an additional hearing and permit the testimony of the witnesses, above mentioned, to be taken.

Costs on appeal will await the final determination of the case.

Givens, C.J., and Budge, Holden and Ailshie, JJ., concur.