292 P.2d 469

Gladys E. DEVLIN, for and on behalf of Karin Jean Devlin, a minor, Claimant-Appellant,

v.

Paul B. ENNIS, Administrator of the Estate of William G. Searles, Employer, and State Insurance Fund, Surety, Defendants-Respondents.

Mrs. Ray Bozek, Intervenor-Appellant.

No. 8270.

Supreme Court of Idaho.

Jan. 13, 1956.

Rehearing Denied Feb. 6, 1956.

Martin & Martin, Boise, for claimant-appellant.

Walter M. Oros, Boise, for intervenor-appellant.

Paul B. Ennis, Boise, for respondent Estate.

Graydon W. Smith, Atty. Gen., Glenn A. Coughlan, Asst. Atty. Gen., for respondent State Ins. Fund.

ANDERSON, Justice.

This is a workmen's compensation case in which the main question is: Did the accident and resultant death of the employee arise out of his employment under I.C. sec. 72–201? It is conceded that it occurred in the course of his employment.

May 11, 1953, between 8:30 and 8:45 a. m., William G. Searles, age 52, went to the house of Mrs. Elizabeth Kenney, a widow, at 1118 Lemp Street, Boise, Idaho, where he had boarded for four years. He told her he had just shot a man, and to come and see what he was going to do. She invited him to come in and have a cup of coffee, but instead he went out to his car and shot himself with a .22 revolver, from the effects of which he died.

The revolver, when examined, was found to contain two empty cartridges. The police were notified, and an acquaintance and former employee of Searles, Robert G. Harlan, was also notified. When Harlan arrived at the scene and ascertained what Searles had said immediately prior to shooting himself, he suggested to the officers that they go to Searles' place of business, located at 1600 Main Street and known as Boise Auto Upholstery, to see if there was another man involved. They arrived there about 9 a. m. or shortly thereafter, and found the place of business locked, but observed through a window that the lights

were on, and saw Eugene Devlin lying on the floor.

Upon gaining entrance, they found Devlin lying on his back with his hands in his side pockets, and there was a wound in the back of his head that appeared to have been caused from a small-caliber gun.

Harlan was an automobile trimmer, as was Devlin, and he had worked for Searles off and on between 1947 and 1952, and thereafter had business transactions with him. Harlan had known Devlin about a year. He knew Searles' tools and Devlin's tools, and observed that Devlin's tools were out on his workbench, an arm rest for a car was partly finished, and Devlin was dressed in his work clothes. A customer came in and asked about getting the arm rest while Harlan and the others were at the place of business.

The evidence discloses that during the afternoon of May 10, 1953, Mr. Devlin and Mrs. Kenney were together at the auto races at Nyssa, Oregon; that about 7:15 a. m. May 11, 1953, Searles was at his customary cafe for breakfast; that he left as usual about 7:45. He went to a service station across the street from the Boise Auto Upholstery just before eight o'clock, and wanted to pay his account there. The service station operator told him he had just paid his bill the first of the month, and Searles replied that "I might take out of here pretty fast," and complained that "the kid" had broken up his home life. Another customer then came in, and Searles left.

The evidence in many respects is indefinite and uncertain, and there are statements in the briefs which are not supported by the evidence except from inference. It does not appear that a thorough investigation was made by any official, or anyone else, at the time of the deaths of the two men.

There is conflicting evidence as to difficulty between Searles and Devlin over Devlin's having gone out socially with Mrs. Kenney, the evidence being uncontradicted that she had at times gone out with each of them, that Searles had boarded with her for about four years, and she had known Devlin about one year. She had quarreled with Searles just prior to May 11, 1953, and asked him to obtain a place elsewhere to board, but testified the quarrel was not about Devlin.

Devlin, at the time of his death, was 26 years of age and divorced, and lived in an apartment on Sixteenth Street with his daughter, Karin Jean Devlin, then five and a half years of age and wholly dependent on him for care and support.

A claim for wrongful death of Devlin was filed by the special administrator of his estate in the estate of Searles, but at the time of the hearing it had neither been approved nor rejected; and a claim for workmen's compensation benefits, upon which this action is based, was filed with the Industrial Accident Board.

The Board found that Searles shot Devlin in the back of the head, which instantly caused his death, that the shooting was premeditated and the result of personal jealousy of Devlin, in nowise involving or arising out of the employer-employee relationship of the men or out of the employment itself, although the assault was in the course of the employment. Compensation was denied. An application for a rehearing was made by the intervenor and appellant, Mrs. Ray Bozek, a daughter of Searles and his sole and only heir. The ground upon which the application was based was that Searles was insane and suffering, at the time of the assault, from the disease known as alcoholic paranoia. The application was denied. The minor claimant, through her grandmother, Gladys E. Devlin, and Mrs. Bozek, the intervenor, have appealed.

■ The intervenor has urged throughout that workmen's compensation should be awarded the claimant. If such is done, it would not only sanction indirectly conduct of the employer in committing an assault upon the employee, but it would also permit the employer to use the workmen's compensation act to shield himself—in this case, his estate—from his civil liability in an action at law. Conway v. Globin, 105 Cal.App.2d 495, 233 P.2d 612.

Appellants in their reply brief contend that the Conway case is completely discredited, if not expressly overruled, by State Compensation Insurance Fund v. Industrial Accident Commission, 38 Cal.2d 659, 242 P.2d 311. We are of the opinion that neither contention is borne out. The factual situations in the two cases are entirely different. In the latter case there was a dispute between an employee and his superior (not his employer) in regard to the latter's treatment of the former in their relations as boss and worker. This was incidental to the employment, and arose out of it, while in the Conway case the injuries were the result of an unprovoked, wilful attack by the employer. The later California case relied on by appellants, 242 P.2d at page 318, states that the weight of authority supports the proposition that assaults arising from personal animosity are not compensable under the workmen's compensation act.

■ While there is some evidence tending to show that Searles may have been an alcoholic paranoiac or insane, nevertheless it does not appear that such was the cause of his killing Devlin, as it appears to have been done as the result of premeditation, and not in a sudden fit of insanity or an unmotivated frenzied attack as in the Pawnee cases, Pawnee Ice Cream Co. v. Cates, 164 Okl. 48, 22 P.2d 347 and Pawnee Ice Cream Co. v. Price, 164 Okl. 120, 23 P.2d 168; but it was the result of imaginary or real personal grievances in no way connected with the employment. There was not sufficient evidence to warrant a finding that Searles was insane under the insanity tests used in Idaho. Even if Searles was insane, his shooting Devlin

was the result of a personal matter having no connection with Devlin's employment. The claimant had the burden to show by a preponderance of the evidence that Devlin's death resulted from an accident arising out of and in the course of his employment. Parkison v. Anaconda Copper Mining Co., 56 Idaho 610, 57 P.2d 1216; Walker v. Hyde, 43 Idaho 625, 253 P. 1104. This claimant failed to do.

Claimant contends that there is no competent evidence to show that Searles shot his employee Devlin, although the special administrator of Devlin's estate filed a claim in Searles' estate stating Devlin "was shot in the back of the head by a revolver held in the hand of the said William G. Searles, his employer." Even without considering this claim as evidence, there are other facts and circumstances sufficient to warrant the board's finding that Searles shot Devlin.

■ Claimant contends that there is no competent evidence to prove that the motive for the killing was personal jealousy, as the evidence of the service station operator should not have been admitted. The record discloses that these statements were made by Searles about "the kid breaking up his home life" either a few minutes before or a few minutes after he killed Devlin, and were properly admitted, as was the statement to Mrs. Kenney to the effect that he had just shot a man. They were admissible to show motivation: i. e., that the

cause of Devlin's death arose outside of his employment, and not out of it.

■ Much latitude is permitted the board in the admission of evidence, and we are of the opinion that there was substantial competent evidence to support the board's findings in this case. Findings of the board, when so supported, are conclusive on appeal. Swan v. Williamson, 74 Idaho 32, 257 P.2d 552. The credit and weight to be given the testimony in a compensation case is for the Industrial Accident Board. Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784. All reasonable inferences drawn by the triers of the facts will be sustained on review. Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404.

In the case of Hudson v. Roberts, 75 Idaho 224, 229, 270 P.2d 837, 839, this court stated:

"It may be stated as a general rule that where an employee is assaulted and injury is inflicted upon him through animosity and ill will arising from some cause wholly disconnected with the employer's business or the employment, the employee cannot recover compensation simply because he is assaulted when he is in the discharge of his duties. Under such circumstances the injury does not arise out of the course of employment, and the employment is not the cause of the injury although it may be the occa-

sion of the wilful act, and may furnish the opportunity for its execution." (Cases cited.)

Larson, in his "The Law of Workmen's Compensation" (1952) vol. 1, sec. 11.20 and sec. 11.21, pp. 136–137, which discusses privately motivated assaults, states:

"When the animosity or dispute which culminates in an assault is imported into the employment from claimant's domestic or private life, the assault does not arise out of the employment under any test. Even the broadest of all, the but-for or positional test, rules out compensability on the reasoning that the assault would have been made in any case, since the assailant was evidently determined to have his vengeance wherever he might find his victim."

■ In the present case, the shooting was not an incident of Devlin's employment, and did not have its origin connected with the employment, but was a personal matter, and therefore it did not arise out of the employment. 58 Am.Jur., Workmen's Compensation, sec. 265, p. 766, states:

" * * * when the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion, of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment."

The case of Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712, is distinguishable from the present case, in that the evidence there did not disclose personal trouble between the claimant and the assailant, and also the assailant was not the employer, as in the present case.

■ The rational mind must be able to trace the result of the injury to the proximate cause set in motion by the employment and not by some other agency, or there can be no recovery. Hawkins v. Portland Gas Light Co., 141 Me. 288, 43 A.2d 718.

Idaho Code, sec. 72–201, provides that there must be a causal connection between the injury and the industry in which it occurs.

This court, in Wells v. Robinson Const. Co., 52 Idaho 562, 16 P.2d 1059, held that while the facts differ in each case, the general principle runs through them all that in order for the injury to be compensable there must be a causal connection between the employment and the injury. Here, the shooting of Devlin by his employer because of animosity was foreign to the employment, and Devlin's death therefore did not arise out of his employment by Searles, who was evidently determined to have his

vengeance wherever he might find his victim.

The order of the Board denying compensation is affirmed.

KEETON and PORTER, JJ., concur.

SMITH, Justice (dissenting).

November 29, 1954, the Industrial Accident Board made its order denying compensation to appellant, surviving minor of Devlin, Searles' deceased employee. During the 30-day appeal period immediately following, appellant made application to the Board for reopening and rehearing of the minor's compensation claim, which application December 29, 1954, the Board denied. Such procedure was designed to elicit the Board's finding upon the evidence indicating Searles' insanity May 11, 1953, when he shot and thereby killed Devlin, his employee, and killed himself a short time afterwards. The Board failed to make any finding thereon.

Appellant in said application also offered to show medically, that at the time of such unfortunate incidents, Searles was suffering from the mental disease and derangement of alcoholic paranoia.

Appellant also pointed out in said application, that the Board failed to find whether the employee Devlin was exposed to personal injury by an insane employer by reason, and as a hazard, of said employment.

The record contains undisputed evidence to the following effect:

That Searles drank intoxicating liquor in increasing quantity from 1947 to the time his death occurred May 11, 1953. He became a heavy, constant drinker for some time prior to his death. During the last year of his life his complexion became yellow and he lost weight. At times he would sit at a bench and stare into space. His ability to handle his business became worse. He became irritable with customers and employees. He constantly talked to the effect that people were trying to take advantage of him. He became suspicious of everyone. His eyes were bloodshot and dilated. During the last year of his life he acted irrational at times. He didn't recognize a friend on the street a week or so before his death.

The Industrial Accident Board took no cognizance of such undisputed evidence and made no findings whatever with reference thereto.

Appellant properly assigned error of the Board in failing to find both on the issue of Searles' sanity, and in denying appellant's application to reopen the matter for further proceedings. Nevertheless, this Court in its majority opinion has failed and refused to take cognizance of such specifications of error.

Inasmuch as the evidence hereinbefore set out is undisputed, and the Board failed

to find thereon, this Court incorrectly attempts invocation of the rule that the findings of the Board, when supported by substantial competent evidence, are conclusive on appeal. That rule applies where the Board has given credit and weight to the evidence, as shown by its findings, and has drawn reasonable inferences therefrom, as shown by its rulings of law, i. e., performed its mandatory duty in those regards, I.C., sec. 72-604 (although herein it failed so to do), and when the evidence supports the Board's findings and rulings so made. The rule perhaps would have application herein, provided, either that the record was devoid of evidence pointing to Searles' insanity; or that an adverse board finding on the undisputed evidence pointing to Searles' insanity, could be said to be supported as a matter of law, by competent evidence.

The majority opinion admits that the record contains evidence tending to show Searles was paranoiac. Paranoia is a very serious mental disorder. It is a progressive type of insanity usually stemming from schizophrenia or dementia praecox. It is characterized by persecution complexes and, as in Searles' case, may progress to the acute and dangerous stage of destructive retaliation, which may lead to terrible crime. Such mentally afflicted individuals are indeed most dangerous. Toxic poisons, such as alcohol, may lead to the paranoia; on the other hand, the paranoiac by use of alcohol may show his mental derangement to a markedly exaggerated degree. Kraines, Therapy of the Neuroses and Psychoses, pp. 421-435; Gray, Attorneys' Handbook of Medicine, Vol. 2, Paranoia, c. 104, pp. 1159-1167. The fact that the Court, in its majority opinion, points to the evidence indicative of Searles' insanity, sufficiently illustrates the necessity of a finding on the issue of sanity. Further, a finding thereon ought to clear the confusion indicated by the majority opinion, to which attention is hereinafter directed.

The Court in its majority opinion finds and concludes inter alia as follows:

"While there is some evidence tending to show that Searles may have been an alcoholic paranoiac or insane, nevertheless it does not appear that such was the cause of his killing Devlin, as it appears to have been done as the result of premeditation, and not in a sudden fit of insanity or an unmotivated, frenzied attack, * * * but it was the result of imaginary or real personal grievances in no way connected with the employment. * * * Even if Searles was insane, his shooting Devlin was the result of a personal matter having no connection with Devlin's employment. * * * Here, the shooting of Devlin by his employer because of animosity was foreign to the employment, and Devlin's death therefore did not arise out of his employment by Searles, who was evident-

ly determined to have his vengeance wherever he might find his victim."

While the Court recognizes the evidence as pointing to Searles' insane paranoia, what follows is most strikingly incongruous, because of the contradictions therein contained; for the opinion then sets out, (1) that the insanity was not the cause of the killing but that the killing was done as the result of premeditation, which presupposes sanity, i. e., capability of committing a willful act; (2) that the killing was the result of imaginary or real personal grievances, which presupposes in the one case mental derangement, and in the other, sanity, i. e., both incapability and capability of committing a willful act; (3) that even if Searles was insane (incapable of committing a willful act) the shooting was the result of a personal matter, which presupposes sanity; (4) that the killing was because of animosity and a determination to have vengeance, which presupposes sanity, i. e., capability of committing a willful act. It is simply impossible to conceive of a person being insane and at the same time sane. Unfortunately the portions of the majority opinion hereinbefore referred to present just that impossible situation.

Moreover, the majority opinion attempts the impossible when it attempts correlation of the two hypotheses into non-compensability, i. e., the infliction of the personal injury which caused Devlin's death by either, (1) the employer's sane mind, or (2) his insane mind; for the wealth of legal authority, hereinafter referred to, simply will not bear out the second hypothesis.

Further, the majority opinion disregards a concept of insanity which has always existed medically and legally, so well expressed in concise language in Chadwick v. White Provision Co., 82 Ga.App. 249, 60 S.E.2d 551, at page 552, as follows:

"An insane person is incapable of committing a willful act, and acts of such persons are in terms of Workman's Compensation Law accidental to the person against whom they are directed."

and recognized by this Court in Louie v. Bamboo Gardens, 67 Idaho 469, 474, 185 P.2d 712; for therein this Court held that regardless of Hong's *imaginary grievance,* —the insane mind,—Louie received a compensation covered *accidental injury.*

The majority opinion quotes from Hudson v. Roberts, 75 Idaho 224, 229, 270 P.2d 837; Larson, Workmen's Compensation Law, Vol. 1, secs. 11.20 and 11.21, pp. 136–137, and 58 Am.Jur., Workmen's Compensation, sec. 265, p. 766, on the proposition that where the workman receives personal injury through the animosity of another, wholly disconnected with the employment, the injury does not arise out of the employment. None of those authorities involve the insane mind as causative of the injury. Moreover, Hudson v. Roberts, supra, recognizes the rule, that where the conditions of the employment have the

effect of exposing the workman to an assault it is generally held, in the absence of extenuating factors, that a resulting injury is compensable.

The majority opinion points to Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712, 714, as distinguishable from the present case because the evidence in the Louie case did not disclose personal trouble between the injured workman and the assailant, and further showed that the assailant was not the employer. The Louie case is not so distinguishable from the present case.

This Court in the Louie case adopted the view that compensation must be awarded where the orbit of the employment brings the workman to the place of danger, although only in retrospect can it be seen to have been a place of danger due to a human agency. This Court in the Louie case carried that view a step further by extending the causative factor of injury to the human agency of delusion of the insane mind seeking out the particular victim, rather than killing indiscriminately. In the Louie case, Hong entertained the delusion that Louie belonged to a tong which sought to kill Hong for certain reasons, which was an insane obsession. Hong entered the restaurant where Louie worked and fired three shots, one striking Louie. While the Court remarked that there was no evidence indicating that Hong was looking for Louie, the Court added:

"*It may, however, be of no significance as to whether or not said Hong was looking for Tom Louie at the time he shot him* and had either a real or imaginary grievance against him. *The fact remains* that *it was an accidental injury* and under the Workmen's Compensation Law, claimant and appellant is entitled to receive compensation as a result of said injury." (Emphasis supplied.)

This Court relied heavily upon the lunatic assault cases from the District of Columbia and Colorado, Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417, and London Guarantee & Accident Co. v. McCoy, 97 Colo. 13, 45 P.2d 900, and concluded:

"* * * the injury was the result of a risk to which appellant was subjected in the course of his employment, and to which he would not have been subjected had he not been so employed. * * * It was his employment that placed him in the position and environment wherein he was assaulted and sustained the accidental injury."

Hudson v. Roberts, supra, also recognizes that rule.

The majority opinion cites Hawkins v. Portland Gas Light Co., 141 Me. 288, 43 A.2d 718; Wells v. Robinson Construction Co., 52 Idaho 562, 16 P.2d 1059; I.C., sec. 72–201, on the proposition that there must be a causal connection between the employ-

ment and the injury, which is true. There is a wealth of authority, however, as will be hereinafter shown, to the effect that the insane mind, by whomsoever possessed, whether by the stranger, the co-employee, or the employer, if causative of personal injury to a workman, compels compensation.

Where a workman receives personal injury during working hours upon the employer's premises, growing out of an assault by a drunken, crazy or insane person, the injury is compensable. Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712; Hudson v. Roberts, 75 Idaho 224, 230, 270 P.2d 837; Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417; Christiansen v. Hill Production Co., 262 App.Div. 379, 29 N.Y.S.2d 24; Katz v. A. Kadans & Co., 232 N.Y. 420, 134 N.E. 330, 23 A.L.R. 401; Gargano v. Essex County News Co., 129 N.J.L. 369, 29 A.2d 879; Giracelli v. Franklin Cleaners & Dyers, 132 N.J.L. 590, 42 A.2d 3; Associated Employers Lloyds v. Wiggins, Tex.Civ. App., 208 S.W.2d 705; McLean's Case, 323 Mass. 35, 80 N.E.2d 40.

Where the workman receives such injury inflicted by a drunken, crazy or insane co-employee, the injury is compensable. Perez v. Fred Harvey, Inc., 54 N.M. 339, 224 P.2d 524; Anderson v. Security Bldg. Co., 100 Conn. 373, 123 A. 843, 40 A.L.R. 1119; Chadwick v. White Provision Co., 82 Ga.App. 249, 60 S.E.2d 551.

Where the workman receives such injury inflicted by the drunken, crazy or insane person, who was the employer while sane, the injury is compensable. Davis v. Bennett, D.C.Mo., 114 F.Supp. 790; Heskett v. Fisher Laundry & Cleaners Co., 217 Ark. 350, 230 S.W.2d 28; Aetna Life Ins. Co. v. Windham, 5 Cir., 53 F.2d 984.

Both the workmen's compensation law and the decisions of this Court admonish the Industrial Accident Board to make inquiries and investigations as shall be deemed necessary. I.C., sec. 72–604. In Nistad v. Winton Lumber Co., 59 Idaho 533, 537, 85 P.2d 236, 237, it is stated:

> " 'It becomes the duty of the board to make full and exhaustive inquiry (citation), and to that end the board may not only examine any competent witness at the conclusion of his direct and cross examination upon all matters material and relevant to any issue, but it may also subpoena and examine other competent witnesses.' "

Feuling v. Farmers' Co-operative Ditch Co., 54 Idaho 326, 334, 31 P.2d 683; Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 450, 74 P.2d 171; McGarrigle v. Grangeville Elec. L. & P. Co., 60 Idaho 690; 97 P.2d 402; Watkins v. Cavanagh, 61 Idaho 720, 107 P.2d 155; Dehlin v. Shuck, 63 Idaho 620, 124 P.2d 244; Lay v. Idaho State School, 64 Idaho 455, 133 P.2d 923; Hagadone v. Kirkpatrick, 66 Idaho 55, 58, 154 P.2d 181; Zipse v. Schmidt Bros., 66 Idaho 30, 37, 154 P.2d 171.

The order of the Industrial Accident Board denying compensation should be reversed and the cause remanded to the Board with directions to reopen the proceeding and receive further evidence relating to the question of Searles' sanity at the time he shot and killed Devlin, and thereupon to make a finding thereon, and enter its order or award accordingly.

TAYLOR, C. J., concurs in this dissent.